**Salem**

ARNOLD COX

v.

OAKWOOD MINING, INC., et al.

No. 0541-92-3

Decided August 31, 1993

966

COUNSEL

Lawrence L. Moise, III, for appellant.

Michael F. Blair, for appellee.

OPINION

**BRAY, J.**—Arnold Cox* (claimant), now deceased, appeals a decision of the Workers' Compensation Commission (commission) which denied his application for coal workers' pneumoconiosis benefits. He contends that the commission erred in refusing to admit an autopsy

---

\* By order entered this date, upon motion of appellant's counsel, the Court substituted Phyllis Helen Cox, administratrix of the estate of Arnold Cox, as the proper party appellant in this case. However, for purposes of consistency, the original style of the case is retained herein.

and related medical report as after-discovered evidence. We agree and reverse the decision of the commission.[1]

The record discloses that claimant was diagnosed with coal workers' pneumoconiosis on December 20, 1989, and filed an application for benefits on November 2, 1990. At a subsequent hearing before a deputy commissioner (deputy), claimant submitted three readings of an x-ray film which indicated the presence of pneumoconiosis. His employer, Oakwood Mining, Inc. (employer), produced three negative readings of the same film. To resolve the issue, the deputy forwarded these x-rays to the Medical College of Virginia Occupational/ Pulmonary Committee (committee) for an independent medical evaluation. However, before that assessment was completed, claimant died of a heart ailment, apparently unrelated to pneumoconiosis.

Claimant's counsel immediately notified the deputy of claimant's death and requested that he "hold this case open" until receipt of a copy of the "autopsy report." In denying the motion, the deputy reminded counsel that the record had been "held only for . . . the . . . committee's reading" and, moreover, that the commission was "allowed only to consider x-ray evidence of the disease." Shortly thereafter, the committee reported a "negative reading" for the disease. However, to afford counsel an opportunity to "cross examine members of the committee," the deputy did not "close" the record until June 15, 1991.

The autopsy report was filed with the commission under cover letter from claimant's counsel dated May 30, 1991, and indicated the presence of "Simple coal workers' pneumoconiosis (CWP), mild." It was followed by a medical report, authored by Dr. Emory Robinette and dated June 4, 1991, which referenced Robinette's previous "radiographic interpretation" and concluded that the "pathological findings" of the autopsy were "consistent with the radiographic interrelations of 1/0" (compensable stage 1 pneumoconiosis). Nevertheless, the deputy refused to allow consideration of either the autopsy or the related report and denied the application.

---

[1] Because we reverse and remand on this issue, we do not address claimant's remaining assignments of error.

Claimant appealed, and the commission affirmed, ruling that, "in the absence of need for consideration of evidence other than x-ray evidence which would satisfy the ILO[2] standards, as required by statute, there was no reason for consideration of an autopsy report or other medical evidence." The commission further noted that "evidence of the condition of a miner's lung determined upon autopsy would not be, in itself, a basis for determining compensability under . . . Code § 65.1-56.1 [now Code § 65.2-504]."

Former Code § 65.1-56.1, as amended in 1990, provided that benefits for coal workers' pneumoconiosis shall be awarded when the disease is "medically determined from *radiographic evidence* and classified under [ILO standards]." (emphasis added). Prior to the amendment, former Code § 65.1-56.1 allowed benefits when the disease was "medically determined to be in the [first, second or third] category," without specific reference to "radiographic evidence."[3] However, the provision of Code § 65.1-56.1, as amended, requiring that the diagnosis be based upon "radiographic evidence," does not proscribe or restrict consideration by the medical expert of other evidence also relevant and appropriate to the radiographic studies. Such limitation would preclude correlation by the expert of all evidence, irrespective of its importance to a comprehensive interpretation of the "x-ray evidence."

The radiographic determination contemplated by the statute is obviously dependent upon the findings of expert medical witnesses. Like all opinion evidence, these conclusions oftentimes depend upon "hearsay factual information" indispensable to a comprehensive inquiry by the expert. *Bowers v. Huddleston*, 241 Va. 83, 86, 399 S.E.2d 811, 813 (1991); *Swiney v. Overby*, 237 Va. 231, 233, 377 S.E.2d 372, 374 (1989); Code § 8.01-401.1. By statute, the sources of such ordinarily inadmissible "facts and data" may be revealed to the fact finder in the context of expert opinion, and disclosure of the information itself "may in any event be required . . . on cross-examination." Code § 8.01-401.1; *see McMunn v. Tatum*, 237 Va. 558, 565-66 nn.2-3, 379 S.E.2d 908, 912 nn.2-3 (1989); Charles E. Friend, *The Law of*

---

[2] International Labour Office Classification of Radiographs of the Pneumoconioses (1980).

[3] Claimant contends that this statute, in effect at the time of the first communication of the disease, governs his claim. *See Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 10, 365 S.E.2d 782, 787 (1988). Because we find the distinction between the statutes immaterial for purposes of our decision, we decline to address this issue.

*Evidence in Virginia* § 217 (3d ed. 1988). Otherwise, the foundation of the opinion and its attendant reliability could not be fully and properly measured. Commission Rule 1, which expressly countenances "hearsay evidence" in furtherance of the "substantial rights of the parties," accommodates this principle. *See Board of Supervisors v. Martin*, 3 Va. App. 139, 144, 348 S.E.2d 540, 542 (1986), *appeal dismissed*, 363 S.E.2d 703 (Va. 1987).

■ By declining to permit consideration of the autopsy evidence in conjunction with the several conflicting opinions from the radiographic evidence, through both direct and cross-examination of the experts, the commission adopted an unnecessarily narrow construction of former Code § 65.1-56.1, inconsistent with Code § 8.01-401.1 and well-established rules of evidence. We acknowledge that the "construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court." *Peyton v. Williams*, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965). However, "[w]hen an agency's statutory interpretation conflicts with the language of the statute or when the interpretation has not been consistently and regularly applied, the usual deference . . . should be withheld." *Commonwealth v. May Bros., Inc.*, 11 Va. App. 115, 119, 396 S.E.2d 695, 697 (1990).

■ It is well established that a statute "should be construed with a view toward harmonizing it with other statutes" and consistent with "fundamental law, especially where no violence is done to the language of the statute and such interpretation satisfies its terms." *Morris v. Morris*, 4 Va. App. 539, 543-44, 359 S.E.2d 104, 107 (1987). When confronted with "potential conflict" in statutes, "it is this court's duty to construe those provisions in a manner which would give full force and effect to both provisions" and avoid "an injustice on the parties." *Cooper v. Occoquan Land Development Corp.*, 8 Va. App. 1, 6, 377 S.E.2d 631, 633 (1989), *rev'd on other grounds*, 239 Va. 363, 389 S.E.2d 464 (1990).

An expert's consideration of "facts and data" appropriate to a radiographic interpretation is at once consonant with both statutory and case law and the mandate of former Code § 65.1-56.1. Thus, the autopsy report and related "other medical evidence" were admissible for consideration by the commission in conjunction with the controverted opinions.

However, for such evidence to be proper in this instance, it must also qualify as after-discovered evidence. Commission Rule (2)(c) provides, in pertinent part, that:

[a]ny petition for reopening of the case and taking of additional testimony will only be favorably acted upon by the Full Commission when it appears to the Commission that such course is absolutely necessary and advisable and also when the party requesting the same is able to conform to the rules prevailing in the courts of this State for the introduction of after-discovered evidence.

It is well established that a party seeking to introduce after-discovered evidence "bears the burden to establish" that it

(1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

*Odum v. Commonwealth*, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983); *Carter v. Commonwealth*, 10 Va. App. 507, 512, 393 S.E.2d 639, 642 (1990).

The autopsy report revealed the presence of "Simple coal workers' pneumoconiosis (CWP), mild." Dr. Robinette considered this report, and related findings, as he interpreted the radiographic evidence and found the "pathological findings of simple coal workers' pneumoconiosis" reflected in the autopsy report "consistent with the radiographic interrelations of 1/0." This perspective was unavailable to any expert without the autopsy report which followed claimant's death and clearly enhanced the reliability of the radiographic interpretation, suggesting the likelihood of a different result if properly considered on remand. *See Michigan & Vicinity Conference Bd. v. Enterprise Foundry Co.*, 321 Mich. 265, 272-73, 32 N.W.2d 515, 518 (1948); *Freeman United Coal Mining Co. v. Industrial Comm'n*, 224 Ill. App. 3d 778, 782-90, 587 N.E.2d 1141, 1144-49 (1992).

Accordingly, because the commission erroneously excluded the use of evidence relevant and material to the proceedings, we reverse its

decision and remand to permit appropriate consideration of the autopsy report in conjunction with the radiographic interpretations.

*Reversed and remanded.*

Coleman, J., and Koontz, J.,** concurred.

---

** When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.