456 S.E.2d 155

**CLC CONSTRUCTION, INC. and Ohio Casualty Insurance Company**

**v.**

**Ricardo LOPEZ.**

**Record No. 1229–94–4.**

Court of Appeals of Virginia,
Alexandria.

April 25, 1995.

(Dawn E. Boyce, Lewis, Trichilo, Bancroft, McGavin & Horvath, P.C., Fairfax, on brief), for appellants.

Manuel R. Geraldo, Washington, DC (Robinson & Geraldo, P.C., on brief), for appellee.

Present: BARROW * and FITZPATRICK, JJ., and DUFF, Senior Judge.

DUFF, Senior Judge.

CLC Construction Company and its insurer (hereinafter collectively referred to as "CLC" or "employer") appeal from a decision of the Workers' Compensation Commission awarding benefits to Ricardo Lopez. Employer contends that the commission erred in finding that (1) it had jurisdiction, under Code § 65.2–508, to hear Lopez's claim arising out of an accident which occurred at a job site in Maryland; (2) the injuries associated with Lopez's January 4, 1993 fall were a compensable consequence of his December 6, 1991 accident, rather than a new injury; and (3) Lopez adequately marketed his residual work capacity after June 10, 1992. By way of cross-error, Lopez contends that the full commission's holding regarding the applicability of *National Linen Serv. v. McGuinn,* 5 Va.App. 265, 362 S.E.2d 187 (1987), was error and urges reversal thereof. We affirm the commission's holdings

---

* Judge Bernard G. Barrow participated in the hearing and decision of this case and joined in the opinion prior to his death.

on the three issues raised by the employer, which renders the issue raised by cross-error moot.

## I. *JURISDICTION*

On December 6, 1991, Lopez, the vice-president of CLC, sustained an injury to his right knee while working for CLC as a supervisor/concrete finisher at a jobsite in Maryland. Lopez immediately began medical treatment with Dr. Ramesh G. Chandra. Dr. Chandra diagnosed a tear of the anterior cruciate ligament, a tear of the medial meniscus, a grade one strain of the medial collateral ligament, and a possible tear of the posterior cruciate ligament. He performed arthroscopic surgery on Lopez's knee on January 23, 1992.

On January 3, 1992, employer filed a First Report of Accident with the Virginia Workers' Compensation Commission, reporting Lopez's December 6, 1991 accident. Employer also filed a claim related to the December 1991 accident with the Maryland Worker's Compensation Commission. Employer refused to file a Memorandum of Agreement in Virginia, contending that Virginia did not have jurisdiction over the case. Employer paid Lopez temporary total disability benefits, pursuant to a Maryland award, from December 7, 1991 through September 4, 1992 in the amount of $17,628.00. On October 1, 1992, Lopez filed an application with the Virginia Workers' Compensation Commission seeking an award of temporary total disability benefits beginning December 7, 1991.

At the time of the December 6, 1991 accident, Lopez's home address was in Dumfries, Virginia. He and Edgar Castro, the president of CLC, had initially met at Lopez's Virginia home to discuss establishing CLC as a construction business. Lopez testified that he was hired at the time of this meeting. Lopez and Castro then went to a lawyer in Annandale, Virginia to incorporate their business. They told the lawyer that they wanted to incorporate in Virginia, Maryland, and Washington, D.C. CLC was incorporated in Maryland, but not

Virginia. In addition, CLC did not hold a certificate authorizing it to do business in Virginia.

CLC's mailing address was Castro's home in Maryland, because Castro did not want to drive to Virginia to run his end of the business. Castro found jobs for CLC, prepared estimates, and collected money. Records relating to specific projects performed by CLC were kept by Castro in Maryland.

Lopez's wife performed the bookkeeping functions for CLC at the Lopez's Virginia home, including preparing the taxes and the payroll. Lopez testified that CLC rented a construction yard in Woodbridge, Virginia. CLC stored its equipment at the Virginia yard, and employees met there on a daily basis to go to job assignments. Lopez testified that Castro met him on a daily basis at various job sites. He also stated that CLC initially performed most of its projects in Virginia.

CLC's workers' compensation and employer's liability insurance policy listed the Woodbridge yard as a covered location. The application for insurance reflected that CLC had Virginia and Maryland employees. Richard Tolson, the insurance agent who took the applications, testified that Lopez and Castro provided him with the information contained on the documents. Tolson understood from his conversation with them that Castro had an office in Maryland and all mail was to be sent to him, but that all of CLC's operations were in Virginia.[1]

Code § 65.2–508 sets forth two requirements which must be met in order for a claimant, who is injured outside of Virginia, to prove that he is entitled to an award of compensation under Virginia law. In order for jurisdiction to lie in

---

1. The commission is not bound by common law rules of evidence. Hearsay evidence is admissible under the Workers' Compensation Act and can be used as the basis of an award. *See Derby v. Swift & Co.,* 188 Va. 336, 341, 49 S.E.2d 417, 419 (1948). Thus, we find employer's contention that the commission erred in admitting the insurance documents and Tolson's testimony into evidence to be without merit. This evidence was sufficiently probative and reliable, and the commission did not abuse its discretion in considering it.

Virginia, a claimant must show that (1) his contract of employment was made in Virginia; and (2) the employer's place of business is in Virginia, provided the contract of employment was not expressly for service exclusively performed outside of Virginia. *Id.* We are bound by the commission's finding that it had jurisdiction to hear this case, unless we find that the commission was plainly wrong in concluding that Lopez's evidence proved both of these elements. *See Worsham v. Transpersonnel, Inc.,* 15 Va.App. 681, 683, 426 S.E.2d 497, 499 (1993).

 With respect to the first prong of the test contained in Code § 65.2–508, it was undisputed that Lopez and Castro met at Lopez's home in Virginia, and that Lopez was hired at that location. Thus, the employment contract was made in Virginia. They then went to a lawyer in Virginia to request that the business be incorporated in Virginia, Maryland, and Washington, D.C. The mere fact that CLC was incorporated in Maryland does not require this Court to hold that Lopez, as an officer of the corporation, was hired in Maryland, rather than Virginia. We find no support for such a contention in the facts or the case law.

We address the second prong of the test contained in Code § 65.2–508 by first discussing our holding in *Worsham.* In *Worsham,* we construed Code § 65.2–508(2) as requiring a claimant to prove that his employer maintained its "place of business" in Virginia. We held that the commission was not plainly wrong in finding that the employee failed to prove that the employer's "place of business" at the time of the accident was in Virginia. 15 Va.App. at 683, 426 S.E.2d at 499.

The evidence in *Worsham* showed that the employer, an Illinois corporation, was licensed to do business in Virginia, but had no offices or facilities in Virginia and did not pay licensing fees to Virginia for its trucks or equipment. 15 Va.App. at 682, 426 S.E.2d at 498. Moreover, Worsham, a truck driver, received his instructions from employer's Pennsylvania office, his paychecks were mailed from employer's Milwaukee headquarters, and he was not required to live in

Virginia. *Id.* at 682–83, 426 S.E.2d at 499. Worsham delivered all of his loads outside of Virginia. *Id.* at 683, 426 S.E.2d at 499. We concluded that Code § 65.2–508(2) meant "something other than ... merely conducting business in Virginia." *Worsham*, 15 Va.App. at 683, 426 S.E.2d at 499.

This case is distinguishable from *Worsham*. Here, the testimony of Lopez and Tolson, coupled with the insurance documents, established that CLC did not merely conduct business in Virginia, but that it actually maintained its place of business in Virginia. The bookkeeping functions, which included the taxes and payroll, were performed in Virginia. CLC rented a construction yard in Virginia, where it stored its equipment and where employees met on a daily basis to go to job assignments. Lopez testified that CLC performed many projects in Virginia. This credible evidence was undisputed.

The only apparent connection to Maryland was that Castro maintained an apartment there where he received mail for CLC. Castro found jobs, prepared estimates, and collected money. However, no evidence proved that he performed these functions solely from his Maryland apartment.

We conclude that Lopez's evidence proved that he was hired in Virginia and that CLC maintained its place of business in Virginia. Accordingly, we cannot say that the commission was plainly wrong in finding that it had jurisdiction to hear this case.

## II. *JANUARY 4, 1993 INCIDENT*

■ "The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." *Ingersoll–Rand Co. v. Musick*, 7 Va.App. 684, 688, 376 S.E.2d 814, 817 (1989).

[W]here a causal connection between the initial compensable injury and the subsequent injury is established, the doctrine of compensable consequences extends the coverage of the ... Act to the subsequent injury because the subsequent injury "is treated as if it occurred in the course of and arising out of the employee's employment."

*Bartholow Drywall Co. v. Hill,* 12 Va.App. 790, 794, 407 S.E.2d 1, 3 (1991) (citation omitted).

Lopez testified that on January 4, 1993, as he was getting out of his car to go in his house, he put his right leg between the concrete and the grass. When he started to walk, he twisted his leg. He stated that his leg gave out as he stepped from the car.

Beginning on March 6, 1992, Dr. Chandra noted instability in Lopez's knee. Over the course of the summer of 1992, Dr. Chandra consistently noted that Lopez suffered from episodes of his knee giving out. Dr. Chandra prescribed various knee braces for Lopez to wear in an effort to negate the instability. On September 28, 1992, Dr. Chandra noted that Lopez's knee gave out when he did not wear the brace. At that time, unaware that Lopez's pre-injury work involved heavy labor, Dr. Chandra released Lopez to return to his pre-December 6, 1991 work.

Lopez returned to Dr. Chandra on January 8, 1993. He told Dr. Chandra about the January 4, 1993 fall. Dr. Chandra noted at that time that "[i]t is conceivable that [Lopez] may have had an episode of instability. . . ." In a February 8, 1993 letter to Lopez's attorney, Dr. Chandra stated that Lopez had suffered from grade I anterolateral instability throughout the summer of 1992. Dr. Chandra opined that the January 4, 1993 injury was caused by the residual instability in Lopez's knee, which was directly related to the original injury of December 6, 1991.

Dr. Chandra's medical records and opinions and Lopez's testimony provide substantial credible evidence to support the commission's finding that Lopez's January 4, 1993 knee problems were a compensable consequence of the December 6, 1991 injury. Lopez's knee instability had been well-documented since the December 6, 1991 accident, and he testified that his knee gave way on January 4, 1993, as it had done on previous occasions. We will not disturb the commission's finding on appeal. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to

support the commission's finding." *Wagner Enters., Inc. v. Brooks,* 12 Va.App. 890, 894, 407 S.E.2d 32, 35 (1991).

## III. *MARKETING*

"In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to [Lopez], as he was the prevailing party before the commission." *National Linen Serv. v. McGuinn,* 8 Va.App. 267, 270, 380 S.E.2d 31, 33 (1989) (citation omitted). Where, as here, there is no conflict in the evidence, "the question of the sufficiency of the evidence is one of law." *Id.*

Lopez's only work experience in the United States was as a supervisor/finisher. He speaks broken English and has a seventh grade education. When he was first released by Dr. Chandra in June 1992 to return to supervisory duties, he went back to CLC, only to find that Castro had disappeared along with all of the equipment and project records. Thereafter, Lopez diligently looked for jobs in his field based upon Dr. Chandra's vague release for him to return to supervisory work. He contacted at least four construction companies, talked with acquaintances in the industry, and searched the newspaper for possible job prospects. In December 1992, he found a small painting job, which lasted two days. In July 1993, he found a carpenter/finisher job; however, he could not perform the job because of his knee condition. In February 1993, Dr. Chandra realized he misunderstood the nature of Lopez's work, which sometimes required Lopez to perform heavy labor, in addition to his supervisory duties. As a result, Dr. Chandra recommended that Lopez not return to the strenuous levels of his pre-injury occupation. However, Dr. Chandra still failed to place any specific restrictions on Lopez which would have assisted him in finding light work.

In light of, among other things, Dr. Chandra's failure to place specific restrictions upon Lopez, we cannot say as a matter of law that the commission erred in finding that Lopez

made a reasonable and good faith effort to market his remaining work capacity after June 10, 1992.

As this holding renders the cross-error moot, we decline to address it.

Accordingly, we affirm the commission's decision.

*Affirmed.*