COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


ARTURO RIOS
                                              OPINION BY
v.    Record No. 0804-00-2        JUDGE SAM W. COLEMAN III
                                              MARCH 6, 2001
RYAN INC. CENTRAL AND
 RELIANCE NATIONAL INDEMNITY COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Gregory O. Harbison (Craig Davis; Geoffrey R.
        McDonald & Associates, P.C., on brief), for
        appellant.

        S. Vernon Priddy, III (Patsy L. Mundy; Sands,
        Anderson, Marks & Miller, on brief), for
        appellees.


     Arturo Rios appeals the Workers' Compensation Commission's

decision denying his application for disability benefits.  He

argues that:  (1) the commission erred in finding he was not an

employee under the Workers' Compensation Act; (2) the denial of

benefits violated his constitutional equal protection rights;

(3) the deputy commissioner erred by admitting hearsay evidence;

and (4) the deputy commissioner erred by refusing to recuse

---

[*] Judge Coleman participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2000 and thereafter by his designation as a senior judge pursuant to Code § 17.1-401.

herself.  For the following reasons, we affirm the commission's decision.

## I.  BACKGROUND

Rios was employed by Ryan Inc. Central in August 1994 as a laborer and truck driver.  On August 25, 1998, Rios sustained an injury by accident arising out of and in the course of his employment.  Rios filed a claim for workers' compensation disability benefits.  Employer defended the claim, arguing, among other things, that Rios was an alien who was not authorized by the United States immigration law to work in this country and, thus, was not an "employee" within the meaning of the Workers' Compensation Act (Act).

At the time Rios was hired, he signed an employment eligibility and verification form required by federal law, attesting that he was an alien authorized to lawfully work in the United States.  Rios supplied a social security number and a resident alien number to complete the form.  After Rios filed his compensation claim, a special investigator with employer's insurance carrier investigated the situation.  The investigator testified that the social security number Rios provided his employer was fraudulent.  The social security number was issued in 1959 or 1960 to a person in California who is now deceased. Further, an official from the Immigration and Naturalization Service (INS) informed the deputy commissioner that the resident alien number Rios provided was also fraudulent.

- 2 -

At the hearing, Rios asserted that he should be considered a "legal citizen" at the time he was injured, and, thus, entitled to benefits, because he had married an American citizen.  On January 20, 1998, seven months before Rios' injury, he married Juanita Santos, an American citizen.  Additionally, Juanita Santos testified that a couple of weeks after they were married, she submitted paperwork to INS seeking to adjust Rios' alien status.  She stated that she had never received a response to her application.  She further testified that she submitted another request for adjustment of status the week before the hearing.  Rios conceded he did not have any documentation from INS establishing his citizenship or his status as a lawful permanent resident.

## II.  ANALYSIS

### A.  Evidentiary and Procedural Issues

We first address Rios' claims of evidentiary or procedural errors because any errors at the hearing might require reversal and remand of the commission's decision without reaching the merits of Rios' claim that he was an "employee" under the Act.

Prior to the deputy commissioner's evidentiary hearing, Rios sought to exclude as inadmissible hearsay the evidence from INS that he had provided a fraudulent alien registration number on his employment eligibility and verification form.  Prior to the hearing, INS refused to provide the information to employer, informing employer that the request must come from the

commission.  Thus, the deputy commissioner, upon employer's request, obtained the information and forwarded it to both counsel for employer and Rios.  Rios filed a motion to exclude the evidence and a motion to recuse the deputy commissioner, arguing that the evidence was inadmissible hearsay and had been improperly obtained on employer's behalf through the adversarial efforts of the deputy commissioner.

The deputy commissioner did not err by admitting the INS evidence.  The Supreme Court and this Court have repeatedly recognized that hearsay evidence is admissible in workers' compensation proceedings.  See Transfer v. Dicks, 229 Va. 548, 555, 331 S.E.2d 449, 453 (1985) (recognizing that commission is not governed by common law rules of evidence); Williams v. Fuqua, 199 Va. 709, 714, 101 S.E.2d 562, 566 (1958); Derby v. Swift & Co., 188 Va. 336, 341, 49 S.E.2d 417, 419 (1948); CLC Constr., Inc. v. Lopez, 20 Va. App. 258, 263 n.1, 456 S.E.2d 155, 157 n.1 (1995); Cox v. Oakwood Mining, Inc., 16 Va. App. 965, 969, 434 S.E.2d 904, 907 (1993) (recognizing that commission's rules permit hearsay evidence); see also Rule 2.2, Rules of the Virginia Workers' Compensation Commission. "[R]igid or technical rules of pleading, evidence, or practice in the conduct of hearings shall not apply so long as the procedures adopted protect the substantial rights of the parties."  Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986) (citations omitted).

The INS document was provided to Rios and his counsel in advance of the hearing. Rios advances no claim that the document is not authentic or does not reflect the facts as to Rios' situation; in fact, Rios acknowledges that the document is accurate. The evidence was reliable, relevant, and material. The commission did not abuse its discretion by admitting the evidence.

The deputy commissioner did not err by refusing to recuse herself. See Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 672-73, 299 S.E.2d 863, 867 (1983) (stating that a trial judge's recusal decision is left to the sound discretion of the judge). Rios argues that it was inappropriate for the deputy commissioner to have obtained the information from INS on employer's behalf and then to evaluate the evidence and decide the claim. He asserts that the deputy commissioner took an active role in obtaining critical evidence on behalf of employer, which was detrimental to him.

Hearing officers for administrative agencies, unlike trial judges, customarily and routinely assist in securing and obtaining evidence in cases at the request of the parties. No evidence indicates that the deputy commissioner harbored or demonstrated bias or prejudice against Rios in obtaining information from another governmental agency, INS. The deputy commissioner obtained the information only after employer requested it and was informed by INS that the request must come

from the commission.  We see little difference between the deputy commissioner informally requesting the evidence from INS and directing a subpoena to INS for the documents.  The deputy commissioner did not abuse her discretion by declining to recuse herself.

### B.  Employee Status

We next consider whether an unauthorized or illegal alien, who claims to have been married to an American citizen at the time of the accident, but after the date of employment, is an "employee" under the Act.

As a claimant seeking benefits, Rios bears the burden of establishing that he is an employee under the Act.  See Granados v. Windson Dev. Corp., 257 Va. 103, 108, 509 S.E.2d 290, 293 (1999).  Code § 65.2-101 defines, in pertinent part, an "employee" as "[e]very person, including a minor, in the service of another under any contract of hire."[1]  In Granados, the Supreme Court held that an illegal alien is not an "employee"

---

[1] Section 65.2-101 was amended, effective April 19, 2000, to provide that an employee is "[e]very person, including aliens and minors, in the service of another under any contract of hire . . . whether lawfully or unlawfully employed . . . ."  In view of the Supreme Court's construction in Granados of Code § 65.2-101 prior to the April 19, 2000 amendment, we are constrained by the holding that prior to the amendment an illegal alien was not an employee under the Act.  Therefore, we cannot give the amendment retroactive effect unless and until the Supreme Court shall declare that the amendment was intended "as a legislative interpretation of the original act."  Boyd v. Commonwealth, 216 Va. 16, 20-21, 215 S.E.2d 915, 918 (1975).

under the Act because "under the Immigration Reform and Control Act of 1986, an illegal alien cannot be employed lawfully in the United States." Id. at 108, 509 S.E.2d at 293. The Court concluded that Granados was not lawfully in the service of the employer under a valid or enforceable contract for hire and, thus, was not an "employee" as defined by Code § 65.2-101. Accordingly, the Court held that Granados was "not eligible to receive compensation benefits as an 'employee' under the Act because his purported contract of hire was void and unenforceable." Id. at 108-09, 509 S.E.2d at 293.

Although Rios asserts that he believed in good faith that he became a citizen when he married an American citizen and, thus, could be lawfully employed, Rios was an "unauthorized alien" at the time he attempted to contract for hire with Ryan. Thus, under the holding in Granados, the contract of employment was "void and unenforceable." Accordingly, Granados controls our decision, which is that Rios was not an "employee" under the Act as it then read.

Nevertheless, in an effort to distinguish his situation from the controlling principles of Granados, Rios appears to advance two arguments in support of his claim that he had become lawfully employed at the time of his injury: (1) he had become a citizen by virtue of his marriage to Juanita Santos, thereby validating his employment contract; and (2) he was a "lawful

permanent resident" of the United States by virtue of his marriage to Juanita Santos.

Federal law provides, with respect to employment, that an "unauthorized alien" is an alien who is not at the time of employment either "(A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General."  8 U.S.C. § 1324(h)(3) (1994).

However, under current United States immigration law, two situations exist in which Rios might claim that he lawfully resides in the United States and, thus, is an "employee" under the Act.  First, § 1430(a) provides that an alien may become a naturalized citizen by marriage to an American citizen, and second, based on the provisions of § 1255, the alien qualifies as a "permanent resident" and is not, therefore, an "unauthorized alien."  See 8 U.S.C. §§ 1430(a), 1255 (1994 & Supp. 1998).

Assuming Granados does not apply because Rios' employment contract became retroactively valid and enforceable after he became a naturalized citizen by virtue of § 1430(a) or because he became "an alien lawfully admitted for permanent residence" by virtue of § 1255, Rios has failed to prove that he satisfied the requirements of either statute to be a citizen or an alien lawfully admitted for permanent residence.

Section 1430(a) provides:

>    Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse
>    . . . .

Section 1430 requires that to be eligible for naturalization by marriage to an American citizen, the alien must have resided continuously after being lawfully admitted for permanent residence within the United States, for at least three years and during that time been living in marital union with the citizen spouse. Rios failed to prove that he was a lawful permanent resident, that he resided in the United States for the requisite period after having been declared a lawful permanent resident, or that he resided in marital union with Juanita Santos for three years. In fact, Rios only claims to have been married to Santos since January 1998. Thus, even if becoming a naturalized citizen affected Rios' status for purposes of the holding in Granados, the evidence proves that Rios failed to satisfy a number of the requirements that would have made him eligible to apply for naturalized citizenship.

Alternatively, Rios asserts that he was an "alien lawfully admitted for permanent residence." He seems to claim that because his wife filed an application with INS "to verify [his] status as a permanent legal resident alien" based on their marriage, that for purposes of the Act he should be considered an "employee." Rios apparently claims, without referencing a controlling statute, that "an alien who marries an American citizen receives permanent resident alien status." Section 1255 provides that an alien's status may be adjusted, in certain circumstances and if specified requirements are satisfied, to that of a lawful permanent resident. However, Rios has failed to prove that he satisfied any statutory requirements entitling him to permanent resident alien status. Merely asserting that one is eligible to attain lawful status without complying with the statutory requirements to adjust that status is insufficient to prove a person's status as a lawful permanent resident. Moreover, even if Santos had submitted a change-of-status application for Rios, no evidence proves that the application had been acted upon or Rios' status changed. Assuming that the holding in Granados might not apply if Rios had become a permanent resident alien at the time of the hearing, which we do not decide, such was not the case and on this record Rios was an unauthorized alien at the time of the hearing.

Accordingly, we uphold the commission's findings that Rios was an unauthorized alien at the time of his putative contract

- 10 -

of hire with Ryan and, because the contract was void and unenforceable under the Granados holding, Rios was not an "employee" of Ryan under the Act.

## C. Equal Protection Claim

Rios also argues that, even assuming he was an illegal alien, denial of workers' compensation benefits violates his constitutional right to equal protection under the law.  He asserts that because he had a contract for hire with his employer at the time of the accident, he became an "employee" under the Act entitled to the same benefits as any other employee under a similar contract of hire.  This argument is also foreclosed by the Supreme Court's holding in Granados.  In Granados, the Supreme Court rejected claimant's assertion that the denial of workers' compensation benefits violated his constitutional equal protection rights, holding that "[t]he denial of benefits results from [claimant's] failure to meet his burden of proving that he was an 'employee' under the Act, not from his status as an illegal alien."  257 Va. at 109, 509 S.E.2d at 293.

For the foregoing reasons, we affirm the commission's decision.

                                              Affirmed.

- 11 -

Annunziata, J., concurring.

I concur in the majority's judgment affirming the commission's denial of benefits to the claimant. I agree that the outcome in this case is, on its face, dictated by the Supreme Court's decision in Granados v. Windson Dev. Corp., 257 Va. 103, 509 S.E.2d 290 (1999). I write separately only to emphasize that recent legislative action may provide an avenue by which the Supreme Court, if it is so inclined, could re-visit the question presented in this case and award benefits to the claimant, notwithstanding its holding in Granados. For obvious reasons, I do not believe this Court could appropriately take that action.

Last year, in response to the Granados decision, the legislature amended the definition of an "employee" for purposes of the Workers' Compensation Act. The Code now defines an employee as "[e]very person, including aliens . . ., in the service of another under any contract of hire . . ., written or implied, whether lawfully or unlawfully employed . . . ." Code § 65.2-101. Clearly, by its action, the legislature declared its intent to bring aliens, even those working illegally, under the Workers' Compensation Act.

The amendment adopted by the legislature making clear the Act's coverage of illegal aliens, reflects the prevailing view of the law in other states. See 2 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation Law § 37.02, at 37-3,

- 12 -

D37-3 to D37-4 (2000).[2]  It is also consistent with the central

purpose of the Immigration Reform Act which seeks to inhibit the

employment of undocumented workers by punishing employers rather

than employees who violate its dictates, see 8 U.S.C.

§ 1324a(a)(1), (2); 1324a(e)(4), (e)(5), (f) (2000), and serves

the beneficent purpose of the Workers' Compensation Act as well.

Feitig v. Chalkley, 185 Va. 96, 98, 38 S.E.2d 73, 73 (1946) (the

purpose of the Act is to protect workers by "plac[ing] upon

industry as an expense of the business the pecuniary

loss . . . attendant upon all accidents to employees within the

hazards of the industry"); see also Fauver v. Bell, 192 Va. 518,

521, 65 S.E.2d 575, 577 (1951).

"When amendments are enacted soon after controversies arise

'as to the interpretation of the original act, it is logical to

regard the amendment as a legislative interpretation of the

original act . . . .'"  Boyd v. Commonwealth, 216 Va. 16, 20-21,

215 S.E.2d 915, 918 (1975) (citation omitted).  Because Granados

was based on the Supreme Court's interpretation of the statutory

---

[2] All but one of the several jurisdictions outside Virginia that have considered the question have held that a claimant's illegal alien status does not affect or preclude workers' compensation benefits awards.  The holding by the Wyoming Supreme Court in Felix v. State, 986 P.2d 161 (Wyo. 1999) is the only exception found.  However, it is based on specific statutory language which restricts the term "employee," and limits its workers' compensation coverage to "'aliens authorized to work by the United States department of justice, immigration and naturalization service.'"  Id. at 163 (quoting Wyo. Stat. Ann. § 27-14-102(a)(vii) (Michie Cum. Supp. 1996)).

definition of an "employee," under the reasoning of Boyd, the Court could decide that Granados was, in fact, contrary to the legislature's intent when it originally defined "employee." Hence, the Court could overrule Granados and award benefits to the claimant in this case.