COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Beales and Huff
Argued at Richmond, Virginia


CERES MARINE TERMINALS AND
  ATLANTIC MUTUAL INSURANCE COMPANY
                                                              OPINION BY
v.        Record No. 1603-11-2                       JUDGE WILLIAM G. PETTY
                                                             MARCH 6, 2012
ELDON ARMSTRONG, JR. AND
  JORDAN YOUNG INSTITUTE


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Lawrence J. Postol (Seyfarth Shaw, LLP, on brief), for appellants.

              Zenobia J. Peoples for appellee Jordan Young Institute.

              No brief or argument for appellee Eldon Armstrong, Jr.


        Ceres Marine Terminals and its insurance carrier (collectively "employer") appeal the

Workers' Compensation Commission's decision awarding the payment of $25,664.22 to the

Jordan Young Institute ("medical provider") for medical services rendered to Eldon Armstrong,

Jr., under a workers' compensation award.  The medical provider performed surgery on

Armstrong and billed the employer $30,013.75.  However, the employer paid only $5,123.76 of

the bill.  Thereafter, the commission entered an award for the unpaid balance of the medical bill

after the medical provider requested it to do so.

        On appeal, the employer raises the following assignments of error.  First, "[t]he

Commission erred in limiting its review to the issue of prevailing rates, when the Employer also

challenged what was the Medical Provider's regular rate, and what is a reasonable rate."  Second,

"[t]he Commission erred in not considering the Longshore Fee Schedule as evidence of the

prevailing rate."  Third, "[t]he Commission erred in finding the claim was timely and not barred

by laches, when the claim for medical benefits was filed over four years after the medical services were provided, and the physician was no longer available, and the records were no longer available. The Commission also erred in not barring the claim for spoilage of evidence . . . ."[1] As set forth in further detail below, we find no error in the commission's decision. Therefore, we affirm.

## I. BACKGROUND

Armstrong suffered a compensable injury by accident on July 14, 2000.[2] To treat that injury, a surgeon and his assistant employed by the medical provider performed surgery on Armstrong on January 6, 2005. The medical provider submitted a bill to the employer for the services of the surgeon and his assistant in the amount of $30,013.75. On or around May 12, 2009, the employer paid $5,123.75. In an "Explanation of Benefits" accompanying the payment, the employer explained that it was paying an amount consistent with the Longshore and Harbor Workers' Compensation Medical Fee Schedule, which the employer contended is based upon the same rate set by the federal government under Medicare. On September 22, 2009, the medical provider sent a letter to the commission acknowledging that it had provided treatment to Armstrong under the commission's award and asking the commission to enter an additional award ordering the payment of the balance of the medical bill.

A deputy commissioner considered evidence and argument from the parties on this matter. This evidence included the depositions of Lori Delbridge and Evelyn Thomas, which the

---

[1] In the analysis section of its brief, employer argues that the commission erred when it held that the statute of limitations set forth in Code § 65.2-708 was inapplicable to the medical expenses requested by the medical provider, but the employer has not actually assigned error to this ruling in the "assignments of error" section in its brief. Under our Rules, we only address arguments encompassed by an appellant's express "assignment of error" in his brief. See 5A:20(c); Mecimore v. Alexandria Dep't of Soc. Servs., 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001). Thus, we will not address the merits of this argument.

[2] The record does not establish the exact nature or severity of the injury.

deputy commissioner received *de bene esse*. The employer deposed Delbridge so that it could determine how the medical provider arrived at the billed amount of $30,013.75, and it deposed Thomas to further explain the nature of the fee schedule.

Delbridge was as an employee of the medical provider and was knowledgeable in its billing practices. In response to questions from the employer, she testified that about 50% of the medical provider's patients were on Medicare. Had Armstrong been a Medicare patient rather than a recipient of a workers' compensation award, she confirmed that the medical provider would have accepted the reduced payment of $5,123.75 as "payment in full" for the charges. Moreover, had Armstrong's claim been submitted under the Longshore and Harbor Workers' Compensation Act, Delbridge agreed that the medical provider would have also accepted this amount as "payment in full." However, Delbridge further explained that had Armstrong been covered by Cigna, a private insurance carrier that covered some of its patients, then the medical provider would have "asked for 100% of the charges," or in other words, would have billed the amount it billed the employer, $30,013.75.

Thomas was an employee of the employer working in the employer's workers' compensation department. The employer called Thomas in an attempt to establish the purpose of the Longshore and Harbor Workers' Compensation Medical Fee Schedule. Thomas first verified an exhibit as the fee schedule as it appeared on the U.S. Department of Labor website. She also stated that it was her understanding that the fee schedule was based upon, or the same as, the Medicare fee schedule. The employer then asked her the following question: "So, again, just so the Commission understands, Medicare assigns what they consider to be the relative value of a particular procedure?" In response, Thomas replied, "Right." She finally testified that the payment of $5,123.75 for the surgery performed on Armstrong was the amount set forth in the fee schedule for the geographic region where the surgery took place.

The deputy commissioner found that the employer "failed to rebut the medical provider's *prima facie* evidence," i.e., the medical bill, and that the evidence presented by the employer was insufficient to prove the prevailing rate in the community and thereby relieve itself of liability for the unpaid balance of the bill. As the deputy explained it, the employer "presented no evidence of the rates charged by other physicians [for Armstrong's procedure] in the cities of Norfolk, Virginia Beach, Chesapeake, Suffolk, Portsmouth, Hampton, Newport News, and Williamsburg for the same or similar services." The deputy also found that laches, spoliation of evidence, and the time limitations set forth in Code § 65.2-708 did not apply. Accordingly, the deputy entered an award in favor of the medical provider and against the employer for the unpaid balance of the medical bill, $25,664.22. The full commission agreed and affirmed the deputy commissioner. This appeal followed.

## II. ANALYSIS

### A. The Medical Bill and the Prevailing Rate in the Community

In its first and second assignments of error, the employer challenges the commission's finding that the employer failed to prove that the medical bill for the surgery performed on Armstrong exceeded the prevailing rate in the community for that surgery. In so doing, the employer raises several arguments. The employer first argues that the commission improperly placed the burden of proof on the employer to prove the excessiveness of the amount charged in the medical bill. The employer further argues that the commission should have accepted the fee schedule as evidence of the prevailing rate in the community. Finally, the employer argues that the medical bill was inconsistent with a "reasonable" rate or the rate ordinarily charged by the medical provider, regardless of whether the medical bill reflected the prevailing rate in the community, and that the commission should have denied the award on that basis.

As set forth in further detail below, we disagree with the employer. The commission properly characterized the medical bill as *prima facie* evidence that the charged fee was consistent with the requirements of the Workers' Compensation Act. In the face of that evidence, the commission properly placed the burden of proving the excessiveness of the amount of the bill on the employer. Further, the commission correctly determined that the mere submission of the amount payable for Armstrong's surgery under the Longshore and Harbor Workers' Compensation Medical Fee Schedule, without more, was insufficient evidence of the prevailing rate in the community. Finally, the commission appropriately limited its review of the amount to whether the amount exceeded the prevailing rate in the community for the treatment.

### 1. Burden of Proof

We first address whether the employer had the burden of proving that the medical bill was excessive. As we explain in further detail below, we hold that it did.

Whether a particular party bears the burden of proving a particular issue requires us to "construct," or interpret, the Workers' Compensation Act. See Fairfax Cnty. Sch. Bd. v. Humphrey, 41 Va. App. 147, 155, 583 S.E.2d 65, 68 (2003) (characterizing an issue relating to the proceeding before the commission as a question of construction of the Workers' Compensation Act). "'The commission's construction of the Act is entitled to great weight on appeal.'" Id. (quoting Cross v. Newport News Shipbuilding & Dry Dock Co., 21 Va. App. 530, 533, 465 S.E.2d 598, 599 (1996)). Moreover, the commission is not bound by common law rules of evidence, but may adopt whatever procedures it sees fit so long as they "'protect the substantial rights of the parties.'" Rios v. Ryan, Inc. Cent., 35 Va. App. 40, 44-45, 542 S.E.2d 790, 791-92 (2001) (quoting Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986)). However, "'[w]hile we generally give great weight and deference, on appeal, to the commission's construction of the Workers' Compensation Act, we are not bound by the

commission's legal analysis in this or prior cases.'" Humphrey, 41 Va. App. at 155, 583 S.E.2d at 68 (quoting Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002)). Ultimately, though, we must always remember the humanitarian purpose of the Act, which seeks to provide compensation and medical treatment to employees for injuries they have sustained in the course of and arising out of their employment. See Metro Mach. Corp. v. Sowers, 33 Va. App. 197, 209, 532 S.E.2d 341, 347 (2000). Accordingly, "[t]he Act should be liberally construed in harmony with [this] humane purpose." Id.

In light of these considerations, we begin our review with the relevant portions of the Workers' Compensation Act. Under Code § 65.2-603, if the commission enters an award for an injury resulting in an employee's work incapacity, the employer must pay for all reasonable and necessary medical treatment for the injury. However, under Code § 65.2-605, "[t]he pecuniary liability of the employer for [such reasonably and necessary] medical, surgical, and hospital service" is "limited to such charges as prevail in the same community for similar treatment when such treatment is paid for by the [employee]." Moreover, under Code § 65.2-714, the commission "may order the repayment of the amount of any [physician or hospital] fee which has already been paid [by the employer] that it determines to be excessive."

When we consider the text of the Act along with its well-known humanitarian purpose, we conclude that it was reasonable for the commission to consider the medical bill as *prima facie* evidence that the charges were consistent with the requirements of the Act and to place the burden of proving that the medical fee was excessive on the employer.[3] We reach this conclusion for two reasons.

---

[3] As the commission acknowledged below, it has long placed "the burden of proving that the charges do not meet the community standard of Virginia Code § 65.2-605" on the employer. See, e.g., Rabineau v. McDonald's/RJK Corp., No. 156-99-57 (Va. Workers' Comp. Comm'n Oct. 15, 1993).

First, a contrary rule would unfairly burden the medical provider and create a significant obstacle to the claimant's receipt of the reasonable and necessary treatment he is entitled to under the Act. Where, as here, the medical provider requests payment for reasonable and necessary medical treatment provided to the claimant, the medical provider naturally makes that request on behalf of the claimant. The claimant should efficiently and expediently receive all that he is entitled to under the award, which includes payment for all reasonable and necessary medical treatment.[4] If the claimant, or, by proxy, the medical provider, had the burden to prove that the charge for the claimant's reasonable and necessary medical treatment was not excessive every time payment was sought under an award, such a rule would necessarily frustrate prompt payment for the treatment, and would therefore inhibit the claimant's receipt of treatment that he is entitled to under the Act.[5] See Gens v. Workmen's Comp. Appeal Bd., 631 A.2d 804, 806 (Pa. Commw. Ct. 1993) (holding that it would be inequitable to require a workers' compensation claimant, "who has already proven that her back condition is causally related to her work injuries, to subsequently prove that the medical expenses for treatment of the back condition" are appropriate); Russell v. Genesco, Inc., 651 S.W.2d 206, 210-11 (Tenn. 1983) (placing the burden of establishing the reasonableness of medical charges under a workers' compensation award on the employer because the employer is in a better position to assess the reasonableness of the

---

[4] Of course, the claimant and the provider should have this expectation only with regard to reasonable and necessary medical treatment. Neither the claimant nor his medical provider should expect to be in a favored position in proving the base reasonableness and necessity of the treatment itself. See Portsmouth (City of) Sch. Bd. v. Harris, 58 Va. App. 556, 563, 712 S.E.2d 23, 26 (2011) ("It is the claimant's burden to demonstrate that the treatment for which he seeks payment is causally related to the accident, is necessary for treatment of his compensable injury, and is recommended by an authorized treating physician.").

[5] We are not suggesting that the claimant has any liability to pay for reasonable and necessary medical treatment under an award. In fact, under Code § 65.2-714(D), a medical provider cannot "balance bill an employee in connection with any medical treatment, services, appliances or supplies furnished to the employee in connection with an injury for which an award of compensation" has been made.

charge); see also Bogle Dev. Co. v. Buie, 19 Va. App. 370, 375, 451 S.E.2d 682, 685 (1994) (holding that a medical bill is *prima facie* evidence that the charges were reasonable and necessary), rev'd on other grounds, 250 Va. 431, 463 S.E.2d 467 (1995); Arthur Larson & Lex K. Larson, Larson's Workers' Compensation § 130.06[3][e] n.79 (2010) (similarly describing a medical bill as *prima facie* evidence of reasonableness, which remains sufficient unless challenged by the employer).

Second, a contrary rule would place an excessive burden on the commission. Under the rule adopted by the commission, payment for reasonable and necessary medical treatment is expediently processed. If the claimant had the burden of proving the reasonableness of the charge for such medical treatment, the commission would likely find itself constantly evaluating the propriety of the charges for particular medical treatment whenever a claim is brought for payment, rather than simply doing it in the relatively isolated cases where the employer asserts that the charge is excessive. Accordingly, the commission has adopted the reasonable rule that the employer bears the burden of establishing that a billed medical expense is excessive. Indeed, it cannot be said such a rule impairs the "substantial rights" of the employer in any way.

In light of the foregoing, we find no reason to overturn the commission's rule that the employer bears the burden of proving the excessiveness of the charges contained in a proffered medical bill under a workers' compensation award. Thus, we hold that no error occurred.

### 2. Evidence of the Prevailing Rate in the Community

We next address whether the commission erred when it concluded that the employer had presented insufficient evidence of the prevailing rate in the community.[6] We conclude that it did not.

---

[6] In the employer's view, the commission did "not consider" the Longshore fee schedule as evidence of the prevailing rate in the community. We disagree. The full commission plainly considered the evidence—it simply concluded that it was not "sufficient evidence of the

In addressing this issue, we must consider what the relevant community is and what the "prevailing rate" in that community precisely means. Rule 14 of the commission defines the relevant community for the purposes of Code § 65.2-605. 16 VAC 30-50-150. Under that rule, the relevant community in this case, as the deputy commissioner described it, included "the cities of Norfolk, Virginia Beach, Chesapeake, Suffolk, Portsmouth, Hampton, Newport News, and Williamsburg."[7] A charge which prevails in the community plainly means that which "is in general or wide circulation or use" in the community at the time of the treatment. Webster's Third New International Dictionary (Unabridged) 1797 (1981) (defining the word "prevailing"). Inferentially, then, where patients and providers of medical treatment make up a common market, a charge that "prevail[s]" for a particular treatment may depend upon a wide variety of characteristics of the patient and the provider, and may vary based on these characteristics, as pricing in markets naturally does.

By relying simply on the reimbursement rate set forth in the Longshore fee schedule, the employer misunderstands the fundamental nature of what a prevailing rate is. As the commission correctly explained, the government-mandated reimbursement rate for injured longshoremen or Medicare patients, standing alone, does not prove what the prevailing rate in the community was for Armstrong's surgery. That information establishes only what the government would pay for treating that subset of people who are covered by those particular programs; it does not establish what payment amount actually prevails in the entire community for medical treatment like that received by Armstrong. Simply asking its employee whether the Longshore fee schedule represented "what [Medicare] consider[s] to be the relative value of a

prevailing rates charged in the community." Therefore, we will treat employer's assignment of error as challenging this determination by the commission.

[7] The employer does not dispute this characterization of the relevant community, and thus, for purposes of this appeal, we presume it is an appropriate definition of the community.

particular procedure" does not achieve this end, nor does vaguely arguing (without evidentiary support) that the community includes a large number of longshoremen, as the employer has done in its brief. Moreover, whether the majority of patients that the medical provider treats are on Medicare is immaterial—that statistic says nothing about the rate typically charged for Armstrong's particular procedure in the community. In other words, none of these suppositions answers the ultimate question in this case, i.e., "What would a surgeon and his assistant with the skill and experience of those that operated on Armstrong typically charge for the surgery performed on Armstrong at the time and in the community that the surgery was performed?" Accordingly, we agree with the commission that the employer provided insufficient evidence of the prevailing rate in the community for Armstrong's surgery. Therefore, the commission did not err.

### 3. The Prevailing Rate in the Community As the Proper Standard

We finally address whether the commission should have considered whether the medical bill exceeded the "regular rate charged" by the medical provider or a "reasonable rate" apart from the prevailing rate in the community for similar medical treatment. The employer argues that it should have. We disagree.

Relying at least partly on Code § 65.2-714, the employer asserts that the medical bill was "excessive" as compared to these particular norms. Accordingly, it sought to establish that a majority of the medical provider's patients were covered by Medicare. In the employer's view, this would make the amount set by Medicare (and as represented in the Longshore fee schedule) the "regular rate charged" by the medical provider, which would make that amount a "reasonable" rate for the medical provider to receive in this case. What the employer ignores, however, is that its liability for the payment of reasonable and necessary medical treatment is limited only to the extent set forth in the Workers' Compensation Act. And on this point, the Act

is clear. Under Code § 65.2-603, "[t]he pecuniary liability of the employer for medical, surgical, and hospital service . . . shall be limited to such charges as prevail in the same community for similar treatment." Although Code § 65.2-714 provides a means for the employer to recover an "excessive" payment for medical treatment, we cannot read that section to mean "excessive" as compared to some standard other than the prevailing rate in the same community. The Act names an exclusive basis upon which to determine whether a charge for treatment is excessive—whether the charge exceeds the rate that "prevail[s] in the same community for similar treatment." Thus, the commission did not err when it refused to consider whether the charge in the medical bill exceeded the regular rate of the medical provider or some amorphous "reasonable" rate.

## B. Laches

As part of its third assignment of error, the employer argues that the commission erred when it declined to apply the doctrine of laches. The employer contends that this equitable defense ought to apply because the medical provider sought the unpaid balance of the medical bill from the commission four years after the provider performed the surgery on Armstrong. Because the employer has failed to provide principles of law and authorities to support this argument, and because we find such failure significant, we hold that the employer has waived the argument on appeal.

Under Rule 5A:20(e), an appellant must supply this Court with principles of law and authorities in support of a particular argument. A significant omission in this regard will result in waiver of the argument on appeal. Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010). As this Court has said before, "Appellate courts are not unlit rooms where attorneys may wander blindly about, hoping to stumble upon a reversible error." Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). If an appellant believes that the

- 11 -

commission erred, it is incumbent upon him "to present that error to us with legal authority to support [his] contention." Id.

> "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [an appellant's] position on the issues he raises. On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions, which is essential to an accurate determination of the issues raised on appeal."

Id. at 850, 667 S.E.2d at 865 (quoting People v. Trimble, 537 N.E.2d 363, 364 (Ill. App. Ct. 1989)).

Here, the employer's brief to this Court contains no legal authority in support of the argument that the doctrine of laches ought to apply. Indeed, the entire argument is just three sentences long.[8] The employer has not provided any legal support as to how this doctrine applies to this case. In light of these deficiencies, we find the employer's omission significant. Accordingly, we hold that the employer has waived this argument on appeal.

### C. Evidence Spoliation

Also as part of its third assignment of error, the employer argues that the commission should have applied the evidence spoliation doctrine. As with its argument concerning laches, the employer has failed to provide principles of law and authorities in support of its argument. In

---

[8] The entire argument from the employer's brief regarding laches is as follows:

> If there is no statute of limitations, then laches must apply. For the Commission to find there was no "neglect or omission," when the medical provider submitted its claim nine years after the work injury and over four years after the medical care was rendered, simply makes no sense. This is particularly hard to understand when the Employer has been prejudiced—the surgeon is no longer available to be questioned and billing records of the same procedure for other patients were not retained.

another short argument, the employer has simply asserted that there was evidence spoliation without citing any legal authority in support of its proposition.[9] The employer has not provided any legal support as to how this doctrine applies to this case. Moreover, the employer has not explained what evidence was unavailable, nor has it explained what remedy would be appropriate should we determine the doctrine applicable to this case. Again, we find this omission significant. Accordingly, we hold that the employer has also waived this argument on appeal under Rule 5A:20(e).

### III. CONCLUSION

For the foregoing reasons, we conclude that the commission appropriately determined that the employer failed to meet its burden of proving that the unpaid balance of the medical bill exceeded the prevailing rate in the community for Armstrong's medical treatment and that the commission appropriately judged the propriety of the bill based only on whether the bill was consistent with the prevailing rate in the community. We further conclude that the employer waived its arguments regarding laches and evidence spoliation as a result of its failure to comply with Rule 5A:20(e). Therefore, we affirm the commission's award.

<u>Affirmed.</u>

---

[9] The entire argument from the employer's brief regarding spoliation of evidence is as follows:

> Likewise, for the Commission to find no spoliation of evidence is error. The Commission relied upon its misunderstanding of the Employer's petition—that the only issue was prevailing rate, to hold that payment records for other patients for the same surgery were not relevant. However, what other patients pay is evidence of what the Medical Provider's customary rate is, as well as whether the charge is reasonable, an issue the Employer explicitly raised. Moreover, what the Medical Provider accepted as payment in full from other patients for the same procedure is also evidence of the prevailing rate. As such, the Commission's conclusion is unsupported and should be reversed.