## Alexandria

SOUTHWEST ARCHITECTURAL PRODUCTS, INC., et al.

v.

WILLIAM O. SMITH, JR.

No. 0611-86

Decided July 21, 1987

Counsel

Benjamin J. Trichilo (Lewis, Tydings, Bryan & Trichilo, P.C., on briefs), for appellant.

John B. Delaney (Delaney & Giammittorio, on brief), for appellee.

Opinion

**KEENAN, J.** — Southwest Architectural Products, Inc. (employer) appeals from a decision of the Industrial Commission which held that allowances paid to the claimant, William O. Smith, Jr., for meals, lodging and travel were part of the wage contract and thus properly included when determining his average weekly wage under Code § 65.1-6. The sole issue on appeal is whether the commission properly included these allowances. Finding credible evidence in the record to support the commission's decision, we affirm.

Smith was hired by the employer in June 1983 to install and repair skylights. He sustained an industrial accident on October 20, 1984, and has received temporary total disability benefits since that time. The employer does not dispute Smith's entitlement to compensation, but argues that the commission erred in its method of calculating his average weekly wage by including allowances

paid to him for meals, lodging and travel.

The evidence regarding the nature of Smith's employment and the rate of his compensation is not in dispute. He was hired as part of a crew which traveled from one job location to another and stayed in motels near the various job sites. From September 20, 1983, through June 1984, Smith was assigned to thirteen projects and was continuously on the road. He left the employer for a different job during the summer months of 1984 but returned in September of that year. His injury occurred during his first assignment after rejoining the employer.

Smith was paid $7.50 per hour throughout the time he worked for the employer. Prior to April 1, 1984, Smith also received an allowance of $30 to $50 per day for meals and lodging. The amount of the allowance depended upon the distance of the job site from Smith's "home base." This allowance was not tied to his actual expenses, but instead was paid directly to Smith, who was then responsible for arranging his own meals and lodging.

A travel allowance of $.25 per mile was also paid to Smith prior to April 1, 1984. The amount of this allowance was based on the distance from one job site to the next, and the rate did not vary depending on whether Smith drove or was a passenger in another employee's car.

A change in these allowances occurred on April 1, 1984. At that time, the employer began paying Smith's lodging expenses directly to the motels where he stayed. The allowance for meals was set at $15 per day and the mileage allowance was reduced to $.18 per mile if Smith drove and $.10 per mile if he was a passenger.

The employer's accounting manager, Diane Beck, testified that the allowances for meals, lodging and travel were not reported as salary for tax purposes. Instead, they were reported as expenses and charged directly to the cost of doing a job. According to Beck, the allowances were treated by the employer as an expense reimbursement rather than as additional salary. She acknowledged, however, that prior to April 1, 1984, the allowances for meals and lodging were paid to the employees without regard to their actual expenses.

Regarding the mileage allowance, Beck testified that its purpose was "to give the employee a reimbursement for the money that he has to spend buying food while getting to the job, putting gas in their vehicle, lodging if they have to stay in a hotel. It's to help defray their cost of getting to a job." She further acknowledged that the mileage allowance was designed to compensate employees for travel time when they would not be making an hourly wage.

Smith testified that he considered the allowances to be income although he did not believe they were taxable income and therefore did not report them as such. Smith's understanding of the mileage allowance was that it "cover[ed] your time lost while on the road traveling from job to job." He further testified that although he was hired in Jacksonville, Florida, he was on the road at various job sites throughout the time he worked for the employer.

The deputy commissioner found that Smith's average weekly wage, based on his hourly salary alone, was $245.56. However, the deputy commissioner found that all allowances paid directly to Smith should be included as part of his wages. Adding in the totals for these amounts, the deputy commissioner arrived at an average weekly wage of $395.63. The deputy commissioner did not include as wages the amounts paid by the employer directly to motels after April 1, 1984.

On review, the full commission affirmed. Based on the testimony of Smith and Beck, the commission found that the allowances paid for meals, lodging and travel were "an inducement" to Smith and "were part of the employment contract." The commission also affirmed the deputy commissioner's ruling that the lodging expenses paid directly by the employer after April 1, 1984, were not properly included as part of Smith's wages.

Code § 65.1-6 provides in pertinent part:

Whenever allowances of any character made to an employee in lieu of wages are a specified part of the wage contract, they shall be deemed a part of his earnings.

The employer argues that the allowances paid to Smith in the present case were not part of the wage contract, but were only reimbursements for his work-related expenses. According to the

employer, one purpose of determining an average weekly wage is to gauge the economic loss suffered by the disabled employee. Therefore, the employer contends that where loss of employment terminates the need for work-related expenses, there is no economic loss. In this regard, the employer notes that Smith is now receiving benefits of $263.76 per week while his average gross income from his hourly wage during employment was only $245.56 per week.

The employer further argues that allowances which have not been treated by either party as taxable income should not be deemed compensation in lieu of wages. Finally, it argues that the commission's logic is inconsistent, having allowed Smith the benefit of lodging expenses which he paid himself prior to April 1, 1984, but denying him these sums once they were paid directly by the employer. Smith agrees with this latter point and requests on brief that we reverse the commission's finding that his wages did not include lodging expenses paid directly by the employer. We do not address Smith's contention in this regard because we find that he failed to seek review before the full commission of the deputy commissioner's decision. Rule 2(A), Rules of the Industrial Commission. Although Rule 5A:21(b) allows an appellee to raise additional issues on brief, it does not dispense with the requirement of Rule 5A:18 that only those issues properly preserved for appellate review will be considered.

The legislature has recognized in Code § 65.1-6 that under certain circumstances an employee's actual wage is not limited to an hourly salary. Instead, "allowances of any character" may be included in the wage calculation if they are "a specified part of the wage contract." This statute allows the commission wide discretion in determining the factual question whether a particular allowance is a part of the wage contract.

In exercising its discretion, the commission has consistently ruled that employer-paid fringe benefits, such as insurance, retirement, and profit sharing plans, are not part of the wage contract. *See Boggs v. Equitable Construction Co.*, 60 O.I.C. 45 (1981)(insurance premiums); *Kistler v. McDonald's Corp.*, 58 O.I.C. 205 (1979)(profit sharing); *Beasley v. Southern Stevedoring Corp.*, 50 O.I.C. 21 (1968)(retirement income). On the other hand, the commission has included as wages, allowances for meals, lodging and other expenses, depending upon the circumstances. *See*

*Harless v. Rutherford Freight Lines, Inc.*, 22 O.I.C. 119 (1940)(meals); *Church v. Motor Freight Corp.*, 18 O.I.C. 3 (1936)(expense account); *Baker v. Jones*, 3 O.I.C. 629 (1921)(board).

In the present case, the deputy commissioner relied on *Katcher v. Culpeper Stone Co., Inc.*, (Claim No. 111-14-26, Aug. 3, 1984). There, the commission ruled that a $5 per day travel expense was properly included as part of the employee's average weekly wage. It stated:

> [T]he real basis for determination of payments as substitutes for wages lies in the finding that the amounts are part of the original contract for hire or payment to an employee for services to be performed.

*Id.* at \_\_\_\_.

In the case before us, the commission did not specifically rely on *Katcher* or any other case in affirming the deputy commissioner's ruling. Further the commission did not explain why in the past some allowances have been included while others have not. It only stated:

> We recognize at times there have been cases in which the Commission has not allowed routine travel expense reimbursement as being a part of an employee's average weekly wage. Most frequently, those cases have not indicated that the payments were actually in lieu of wages. In addition, we are aware of the cases which have held that fringe benefits such as employer's contribution to hospitalization plans or premiums for life insurance are not to be considered as part of an employee's wages. The Commission has generally found that such payments are not in lieu of wages.

Reviewing the past cases of the commission, we believe that its decisions have been consistent with the general rule which has developed in other jurisdictions, and which was adopted by this court in *Bosworth v. 7-Up Distributing Co.*, 4 Va. App. 161, 355 S.E.2d 339 (1987). Under the general rule, allowances which constitute an economic gain to the employee, as opposed to mere reimbursement for expenses, are included as part of the employee's wage. We stated in *Bosworth* that "the pertinent question is

whether the allowance represented a payment made in consideration for work and constituted an economic gain to [the employee]." *Id.* at 163, 355 S.E.2d at 341; *see also Blake Stevens Construction v. Henion*, 697 P.2d 230, 232 (Utah 1985). The "economic gain" rule was stated in *Moorehead v. Industrial Commission*, 17 Ariz. App. 96, 495 P.2d 866 (1972) as follows:

> "[W]ages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

*Id.* at 99, 495 P.2d at 869.

In *Bosworth*, we held that a travel allowance for work-related automobile expenses did not constitute an economic gain to the employee (a traveling salesman) and thus was not paid "in lieu of wages." 4 Va. App. at 165, 355 S.E.2d at 341. In reaching this conclusion, we noted that:

> Bosworth's automobile expenses, which were incurred solely to meet the travel obligations of his employment, fall within the category of *expenditures for an activity that he would not have pursued except for his employment* . . . . If 7-Up had ceased paying the allowance because Bosworth no longer incurred those expenses, Bosworth would not have suffered any economic loss.

*Id.* at 164, 355 S.E.2d at 341 (emphasis added).

Two Florida cases further illustrate the application of this rule. In *Viking Sprinkler Co. v. Thomas*, 413 So. 2d 816 (Fla. Dist. Ct. App. 1982), an employee was given a $90 per week expense allowance while away from home. The court approved inclusion of this allowance as part of the employee's wages, stating:

The evidence discloses that the additional sum was paid while the claimant was away from Tampa, which was "all the time," according to his testimony. This additional sum was paid for daily living expenses, including room and meals, and partly for mileage. No accounting for these expenses, nor the expenditure of the $90.00 weekly allowance, was required. The same amount was paid to each employee, regardless of whether he drove his own vehicle or rode in another employee's vehicle. An employee driving his own truck and carrying materials was paid extra for the use of the truck.

*Id.* at 817.

In *Layne Atlantic Co. v. Scott*, 415 So. 2d 837 (Fla. Dist. Ct. App. 1982), a case relied upon by the employer, the court disallowed inclusion of "make-whole reimbursement for uniquely work-related expenses that are created by and within the employment." *Id.* at 839. The items sought to be included were the value of an "out of town vehicle and motel expenses." *Id.* at 838. It appears from the opinion that the motel expenses were reimbursed to the employee on a dollar-for-dollar basis. The court distinguished *Viking* by noting:

There, the uniformity and regularity of the expense payments coupled with the employee's broad discretionary ability in putting the money to use was sufficient evidence from which the deputy could conclude that the allowance was not a bona fide make-whole reimbursement and that the employee had received independent personal benefit.

*Id.* at 839. Applying the "economic gain" rule as stated in *Bosworth* and *Moorehead*, we find credible evidence in the record to support the commission's factual finding that the allowances paid to Smith for meals, lodging and travel were in lieu of wages and part of the wage contract. The commission relied on Smith's testimony and the testimony of the employer's accounting manager, Diane Beck. While acknowledging that there was no written employment agreement, the commission found that the testimony of these witnesses established that the allowances were a part of Smith's wage contract.

Smith's testimony established that his job required him to remain on the road continuously. His allowances for meals and lodg-

ing thus covered everyday living expenses which were not uniquely related to his employment.[1] Further, these allowances were uniformly and regularly paid, were not dependent upon Smith's actual expenses, and he was not required to account to the employer for how the funds were spent.

Beck's testimony supports the inference that the mileage allowance in fact was provided, in part, to compensate employees for time spent in travel. Even after the method of calculation was changed to provide drivers with a larger allowance, employees who rode as passengers were still paid $.10 per mile for their travel. When asked why passengers were paid a mileage allowance, Beck testified, "it was an agreement - I'm not sure why it was paid that way." This evidence supports the conclusion that the mileage allowance provided a real economic gain to Smith.

We reject the employer's suggestion that the allowances should not be included as wages because they were not reported as salary for tax purposes. Whether the employer and employee properly reported to the Internal Revenue Service payments of this character is not controlling. Classification of payments under the Act is a matter for state legislative determination; classification of payments for federal tax purposes is a matter for congressional and Internal Revenue Service determination. The considerations underlying the resolution of these classification issues are not necessarily the same. Thus, neither logic nor policy requires consistent treatment.

We further reject the employer's argument that the commission's decision must be reversed because it is in conflict with prior commission decisions regarding inclusion of fringe benefits as wages. Just as a general rule has developed regarding inclusion of monetary allowances, a general rule regarding fringe benefits has developed. Absent a specific statutory provision, fringe benefits have generally not been considered a part of an employee's wage. *See Morrison-Knudsen Construction Co. v. Director Office of Worker's Compensation Programs*, 461 U.S. 624, 634 (1983). The commission's decisions have been consistent with this rule. As stated by Professor Larson:

---

[1] This fact distinguishes the present case from *Bosworth* where the travel allowance only covered expenses which were incurred solely as a result of the employment.

Workers' compensation has been in force in the United States for over seventy years, and fringe benefits have been a common feature of American industrial life for most of that period. Millions of compensation benefits have been paid during this time. Whether paid voluntarily or in contested and adjudicated cases, they have always begun with a wage basis calculation that made "wage" mean the "wages" that the worker lives on and not miscellaneous "values" that may or may not someday have a value to him depending on a number of uncontrollable contingencies.

2 A. Larson, *The Law of Workmen's Compensation* § 60.12(b) (1987).

We do not reach the employer's argument that the commission's reasoning was inconsistent in that it allowed Smith the benefit of lodging expenses which he paid himself, but disallowed these same expenses once they were paid directly by the employer. As noted earlier, Smith did not seek review of this issue before the full commission so the sole question before us regarding lodging is whether the commission properly included, as wages, the pre-April 1984 lodging allowance. Finding that the commission's decision in this regard is supported by credible evidence, we need not examine the question further.

In summary, we find credible evidence in the record to support the commission's decision that the allowances paid to Smith for meals, lodging and travel were in lieu of wages and part of his wage contract; thus, they were properly included in calculating his average weekly wage. It is well settled that such findings of fact are binding on appeal when supported by credible evidence. Code § 65.1-98; *Richmond Cold Storage Co. v. Burton*, 1 Va. App. 106, 111, 335 S.E.2d 847, 850 (1985). Accordingly, the decision of the commission is affirmed.

*Affirmed.*

Benton, J., and Duff, J., concurred.