COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Petty
Argued at Alexandria, Virginia


KMART MANAGEMENT CORPORATION/SEARS HOLDINGS
   MANAGEMENT CORPORATION AND
INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA

v.      Record No. 1482-09-4                    MEMORANDUM OPINION[*] BY
                                                JUDGE ROBERT J. HUMPHREYS
THOMAS JOHN ZELONES[**]                             MARCH 30, 2010

THOMAS JOHN ZELONES

v.      Record No. 1580-09-4

KMART MANAGEMENT CORPORATION/SEARS HOLDINGS
   MANAGEMENT CORPORATION AND
INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Angela F. Gibbs (Joshua M. Wulf; Midkiff, Muncie & Ross, P.C., on
          briefs), for Kmart Management Corporation/Sears Holdings
          Management Corporation and Indemnity Insurance Company of
          North America.

          Diane C.H. McNamara for Thomas John Zelones.


     The Workers' Compensation Commission ("the commission") found that Thomas

Zelones ("Zelones") sustained a right foot injury due to the accident on July 30, 2007 ("the

accident"), which also aggravated a pre-existing right foot condition that resulted in tarsal tunnel

────────────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [**] The parties have agreed to consolidate these cases for purposes of this opinion.

syndrome to the right foot. The commission further found that Zelones did not experience a left foot injury due to the accident and that the left foot tarsal tunnel syndrome was not causally related to the July 30, 2007 right foot injury. In addition, the commission found that the deputy commissioner did not err in admitting Zelones's log of job leads ("the log") into evidence. Lastly, it found that Zelones failed to reasonably market his residual capacity from June 18, 2008, through September 7, 2008, but that he had reasonably marketed it from September 8, 2008 forward. Therefore, the commission awarded Zelones continuing temporary total disability compensation beginning September 8, 2008.

Kmart Management Corporation/Sears Management Corporation and Indemnity Insurance Company of North America (hereinafter "employer") contend that the commission erred in finding that (1) the log was admissible; (2) Zelones reasonably marketed his residual work capacity from September 8, 2008 forward; and (3) Zelones was entitled to temporary total disability benefits from September 8, 2008, through the present and continuing. Zelones contends that (1) the commission erred in finding he did not adequately market his residual capacity from June 18, 2008, through September 7, 2008; and (2) that his left foot condition was not a compensable consequence of the July 30, 2007 injury. For the following reasons, we affirm the commission.

ANALYSIS

A. Admissibility of the Log

Employer argues that the commission erred in finding the log admissible. Specifically, employer contends that the log was not contemporaneous and therefore did not meet the requirements of the best evidence rule. Employer further contends that, due to the many discrepancies between the log and Zelones's deposition, the log lacked the requisite reliability required for its admission into evidence. We disagree.

The best evidence rule is inapplicable to the log because the contents of the log are collateral to the issue of whether Zelones adequately marketed his residual work capacity. According to Friend, the best evidence rule

> does not apply even to writings when the contents of the writing are not in issue. It should also be noted that it is sometimes said that even though the proponent of the writing is seeking to prove the contents of the writing, the best evidence rule may still be inapplicable if the contents are only "collateral" to the issues in the case.

Charles E. Friend, The Law of Evidence in Virginia § 16-1(a)(2), at 620 (6th ed. 2003). With regard to "collateral" issues, Friend notes "when the fact in issue is one to which witnesses can testify orally from personal observation, any documents which recite the same facts, though they *may* be admissible, are only 'collateral' to the actual fact, and do not *have* to be produced, the oral testimony being acceptable." Id. at 623 (emphasis in original).

Even though the best evidence rule does not apply to the log, the commission, in any event, is not bound by the rules of evidence or the technical rules of practice. Specifically, Rule 2.2 of the Rules of the Commission provides:

> An evidentiary hearing by the Commission shall be conducted as a judicial proceeding. All witnesses shall testify under oath and a record of the proceeding shall be made. Except for rules which the Commission promulgates, *it is not bound by statutory or common law rules of pleading or evidence* nor by technical rules of practice.

(Emphasis added). "'[R]igid or technical rules of . . . evidence . . . in the conduct of hearings shall not apply so long as the procedures adopted protect the substantial rights of the parties.'" Rios v. Ryan Inc. Central, 35 Va. App. 40, 44-45, 542 S.E.2d 790, 792 (2001) (quoting Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986)).

Because the best evidence rule is inapplicable to the log and because the commission is not bound by the rules of evidence, the commission did not err in admitting the log.

B.  Marketing Residual Work Capacity

According to well established principles,

> [W]e consider the evidence in the light most favorable to the party prevailing below.  States Roofing Corp. v. Bush Constr. Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993).  "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  So. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  The commission's findings, if supported by credible evidence or reasonable inferences drawn from the evidence, will not be disturbed upon review, even though the record may contain evidence to support a contrary finding.  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Estate of Kiser v. Pulaski Furniture Co., 41 Va. App. 293, 297-98, 584 S.E.2d 464, 467 (2003).

In order to establish entitlement to temporary total disability benefits, a partially disabled claimant must prove that he made a reasonable effort to procure suitable work, but was unable to market his residual work capacity.  White v. Redman Corp., 41 Va. App. 287, 292, 584 S.E.2d 462, 464 (2003) ("A partially incapacitated employee . . . is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work." (citing Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 600-01, 324 S.E.2d 654, 655-56 (1985)).  "The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact finding judgment of the commission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal."  Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000).

"The employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon all of the facts and surrounding circumstances."  Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987).  "There are no fixed guidelines for determining what constitutes a 'reasonable

- 4 -

effort' by an employee to market residual work capacity." Ford Motor Co. v. Favinger, 275 Va. 83, 89, 654 S.E.2d 575, 579 (2008) (citing Bateman, 4 Va. App. at 467, 359 S.E.2d at 102). However, the commission considers the following factors in determining whether an employee adequately marketed his residual work capacity:

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

Nat'l Linen Servs. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989). "'[T]he effort to seek employment will not be deemed reasonable if the claimant places undue limitations on the kind of work he will accept, including limitations not justified by the character of his impairment.'" Bateman, 4 Va. App. at 467, 359 S.E.2d at 102 (quoting 2 A. Larson, Workmen's Compensation Law § 57.61(d) (1987)).

Zelones makes the following three arguments on appeal with respect to the marketing of his residual work capacity: (1) he properly marketed his residual work capacity from June 18, 2008, through September 7, 2008; (2) he had no duty to market in this case; and (3) the employer is estopped from asserting that he failed to adequately market his residual capacity because employer failed to comply with Code § 65.2-701[1] which prevented Zelones from seeking a

---

[1] Code § 65.2-701(A), Agreement as to compensation; penalty:

> If after injury or death, the employer and the injured employee or his dependents reach an agreement in regard to compensation or in compromise of a claim for compensation under this title, a memorandum of the agreement in the form prescribed by the Commission shall be filed with the Commission for approval. The agreement may be prepared by the employee, the employer or the compensation carrier. If approved, the agreement shall be binding, and an award of compensation entered upon such agreement shall be for all purposes enforceable as provided by § 65.2-710.

directive from the commission to the employer to provide vocational services under Code § 65.2-603(A)(3).[2]

Employer also appeals the issue of Zelones's marketing of his residual capacity contending that Zelones did not reasonably market his residual work capacity from September 8, 2008, forward. For the sake of clarity, we will address each party's arguments in turn.

### 1. Zelones: Duty to Market and Estoppel

Zelones argues on appeal that he did not have a duty to market his residual work capacity, and in the alternative that employer was estopped from asserting that he failed to adequately market his residual work capacity because it failed to comply with Code § 65.2-701. These arguments are procedurally barred under Rule 5A:18 because they were not raised before the commission and are raised for the first time on appeal. See Rule 5A:18; Dominion Coal Corp. v. Bowman, 53 Va. App. 367, 375 n.6, 672 S.E.2d 122, 125 n.6 (2009). "We have consistently held that issues which were not properly preserved before the commission cannot be raised on appeal." Boys and Girls Club of Va. v. Marshall, 37 Va. App. 83, 85 n.1, 554 S.E.2d 104, 105 n.1 (2001) (citing Overhead Door Co. of Norfolk v. Lewis, 29 Va. App. 52, 62, 509 S.E.2d 535, 539 (1999); Southwest Architectural Prod., Inc. v. Smith, 4 Va. App. 474, 478, 358 S.E.2d 745, 747 (1987)). "The contemporaneous objection rule . . . is based on the principle that a litigant has the responsibility to afford a court the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review." Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003).

---

[2] Code § 65.2-603(A)(3):

> The employer shall also furnish or cause to be furnished, at the direction of the Commission, reasonable and necessary vocational rehabilitation services; however, the employer shall not be required to furnish, or cause to be furnished, services under this subdivision to any injured employee not eligible for lawful employment.

Zelones further argues that the "ends of justice" and "good cause" exceptions to Rule 5A:18 are applicable in that the burden of proof was unfairly shifted to Zelones, resulting in a substantial defect in the proceedings. "Rule 5A:18 allows exceptions for good cause or to meet the ends of justice . . . ." Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003). "[T]he ends of justice exception is narrow and is to be used sparingly" by the appellate court. Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail [oneself of the exception,] the defendant [must] affirmatively show that 'a miscarriage of justice has occurred, not . . . that a miscarriage might have occurred' [thus requiring] that the error be clear, substantial and material." Id. (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). In applying this exception, the Supreme Court of Virginia has held that it "requires a determination not only that there was error . . . but also that application of the exception is necessary to avoid a grave injustice." Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 434 (2005).

After reviewing the record in this case, we find no error or grave injustice sufficient to invoke the ends of justice or the good cause exceptions to Rule 5A:18.

### 2. Zelones: Marketing

Zelones argues that he properly marketed his residual work capacity from June 18, 2008, through September 7, 2008, and he is, thus, entitled to wage loss benefits during that period. Zelones contends that the commission's finding that his marketing efforts were inadequate because he testified that he "looked for only 10 to 15 jobs" was wrong because he actually stated, "I guess I applied between – someplace between 10 and 15."[3] He further argues that this response was consistent with the log which notes that he specifically applied to nine of the

---

[3] This was in response to the question "Do you recall the number of places where you have looked for work, even if you don't remember the names?"

seventy-three leads noted during that time period. With regard to the leads on the log, Zelones stated that it could be inferred that he investigated seventy-three leads, and applied only to nine jobs because he learned that many of the positions were not suitable because of his walking restrictions, lack of college education, and lack of skill training beyond retail.

We find credible evidence in the record to support the commission's finding. Zelones testified that he searched on-line for jobs and applied on-line. He further testified that at his deposition, he stated that he applied to between ten and fifteen jobs beginning in mid-June and that he had kept "vague notes" and "scribbling" regarding these jobs. Yet, the log noted that he applied to seventy-three places from mid-June through September 4. The commission agreed with the finding of the deputy commissioner that Zelones's marketing efforts were inadequate based on his deposition testimony that "he looked for only 10 to 15 jobs" from June 18 to September 7, 2008. While Zelones contends it could be inferred from the log that Zelones investigated seventy-three leads but only applied to ten to fifteen, the commission did not make this inference based on its finding that his marketing was inadequate due to his testimony that he looked for only ten to fifteen jobs during that time.

The commission's finding was based on credible evidence, and is thus binding on this Court on appeal.

### 3. Employer: Marketing

Employer contends that Zelones did not reasonably market his residual work capacity from September 8, 2008 forward and that the award of wage loss benefits for that time period must be reversed on the basis that Zelones did not carry his burden of proof on the issue of marketing. Employer specifically argues that Zelones continued to seek work outside of his physical, educational, and professional capacity. Employer contends that Zelones continued to limit his job search to jobs of the exact nature of his pre-injury work that he was not physically

capable of performing.  In addition, employer contends that he limited his search to the pre-injury field in violation of a prior holding of the commission.

The record reflects that Zelones applied for fifteen jobs from September 8 through October 8, 2008.  He searched within a twenty to twenty-five mile radius from his home in light of the fact that he could not drive for more than thirty to forty-five minutes.  Employer is correct in that several of the jobs were in retail, the area in which Zelones has experience; however, a few of the applications were for positions outside of retail.  The commission noted in its opinion that "[g]iven [Zelones's] work restrictions and his experience in retail management, we agree that beginning September 8, 2008, his marketing efforts were reasonable."

The commission's finding that Zelones reasonably marketed his residual work capacity beginning September 8, 2008 and forward is supported by credible evidence, and, therefore, we are bound by it on appeal.

## C.  Entitlement to Total Temporary Disability Benefits

Employer contends that the award of temporary total disability benefits from September 8, 2008 forward should be reversed on the basis that Zelones did not carry his burden of proof regarding his marketing during that period.  Because we hold that the commission did not err in finding Zelones reasonably marketed his residual work capacity from September 8, 2008 forward, we hold that the commission did not err in awarding Zelones temporary total disability benefits from September 8, 2008, through the present and continuing.  See White, 41 Va. App. at 292, 584 S.E.2d at 464 ("A partially incapacitated employee . . . is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work."); Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 42, 422 S.E.2d 165, 171 (1992) ("A claimant still has the burden of proving his entitlement to benefits, and to do that 'he [has] the

burden of proving that he [has] made a reasonable effort to procure suitable work but was unable to market his remaining work capacity.'" (alterations in original) (citation omitted))).

### D. Left Foot Injury Compensable Consequence

Zelones contends that the commission erred in finding that his left foot condition was not a compensable consequence of the July 30, 2007 injury. Specifically, Zelones argues that the commission's reliance on the opinion of Dr. Sharma was plainly wrong because it rested upon a faulty premise.[4] Zelones alleges that Dr. Sharma's conclusion was faulty because he began to show signs of tarsal tunnel syndrome in the first four months following the accident, yet Dr. Sharma did not begin to treat Zelones until six months after the accident. Zelones further contends that Dr. Sharma's response to the questionnaire with regard to the right tarsal tunnel syndrome indicates that she erroneously assumed that Zelones had tarsal tunnel syndrome before the accident.

Whether a condition constitutes a compensable consequence is a factual finding that will not be disturbed on appeal if it is supported by credible evidence. Berglund Chevrolet v. Landrum, 43 Va. App. 742, 756, 601 S.E.2d 693, 700 (2004). Where there is conflicting medical evidence, the Supreme Court has established the following:

> The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion. However, when it appears . . . that the diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (citing McPeek v. P.W. & W. Coal Co., Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); Baltimore

---

[4] Dr. Sharma's opinion was that the right foot tarsal tunnel syndrome was aggravated by the accident and that the left foot tarsal tunnel syndrome was unrelated to the accident.

v. Benedict Coal Corp., 182 Va. 446, 453, 29 S.E.2d 234, 237-38 (1944); Bristol Builders' Supply Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932)).

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). "Whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994).

In this case, the commission did not err when it resolved the conflict in the medical evidence and found that the left tarsal tunnel syndrome was not causally related to the accident. Dr. Sharma, the treating neurologist, conducted the study that revealed that Zelones had moderate tarsal tunnel syndrome. She opined in her response to Zelones's questionnaire on September 26, 2008, that the right tarsal tunnel syndrome was aggravated by the accident, but that the left tarsal tunnel syndrome was not. While Zelones contends this diagnosis was based on a faulty premise, Dr. Sharma had examined Zelones on February 6, 2008, at which time she reviewed his ten-year history of foot problems as well as the accident that occurred on July 30, 2007. When she responded to the questionnaire, she did not do so based on an "assumption that rests upon a faulty premise," but rather after she had knowledge of his medical history and condition. Sneed, 19 Va. App. at 205, 450 S.E.2d at 171.

Dr. Bennett, Zelones's attending physician, responded to a similar questionnaire on August 10, 2008, and noted that the cause of the tarsal tunnel syndrome in the left foot was unknown. He further explained that the condition might be work-related or genetic, and noted that if a condition is bilateral it is usually related to an anatomical impingement (i.e. genetic). Dr. Phillips, the independent medical examiner, opined that Zelones had sustained permanent

injury to both lower extremities due to the accident. The commission, after reviewing all the doctors' opinions, found Dr. Sharma's opinion to be the most persuasive, that Dr. Bennett had indicated the cause of the tarsal tunnel syndrome was unknown, and further that Dr. Phillips's opinion lacked foundation and was not persuasive.

Because we find the commission's finding that the left tarsal tunnel syndrome was not causally related to the accident is based on credible evidence, its finding is binding on this Court on appeal and we affirm.

<u>Affirmed.</u>