COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Annunziata and Senior Judge Hodges
Argued at Alexandria, Virginia


BOYS AND GIRLS CLUB OF VIRGINIA AND
 TIG PREMIER INSURANCE COMPANY

                                                    OPINION BY
v.    Record No. 0264-01-4            JUDGE JAMES W. BENTON, JR.
                                                  OCTOBER 30, 2001
KEITH FITZGERALD MARSHALL, DECEDENT, AND
 DAVANT MARSHALL, A MINOR,
 BY HIS GRANDMOTHER AND
 NEXT FRIEND, CAROLYN MARSHALL


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Joseph F. Giordano (Thomas E. Dempsey;
              Semmes, Bowen & Semmes, on brief), for
              appellants.

              No brief or argument for appellees.


     The sole issue raised by this appeal is whether the

Workers' Compensation Commission erred in finding that Keith

Fitzgerald Marshall's unexplained death arose in the course of

his employment.[1]  We affirm the commission's award.

_____

        [1] The Boys and Girls Club of Virginia, the employer,
contends that the commission erred in finding that "Marshall's
unexplained death arose out of and in the course of his
employment."  In its opinion, the commission ruled, however,
that "the employer's written statement argues only that
[Marshall] was not in the course of employment at the time of
his injury."  Thus, the commission "deem[ed] the other
exceptions initially made to be waived and abandoned" and
limited its review to this single issue.  The commission's
ruling is based upon application of its Rule 3.2.  We have
consistently held that issues which were not properly preserved
before the commission cannot be raised on appeal.  Overhead Door
Co. of Norfolk v. Lewis, 29 Va. App. 52, 62, 509 S.E.2d 535, 539

I.

By well established principles, we view the evidence in the record in the light most favorable to the party prevailing before the commission. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). So viewed, the evidence proved that the Boys and Girls Club of Virginia employed Marshall as its cultural and educational activities director. The employer's executive director testified that Marshall's duties included supervising children in the aquatic center and serving as the lifeguard.

On August 24, 1999, after Marshall supervised an open swim session for a group of children, he sent the children to the locker room to change. The executive director testified that this was the last swim session of the day and that the children were responsible for getting from the pool to the next area of the club on their own. After that session ended, Marshall was expected to "return to the front counter area and do general supervision of the children and interact with the parents as they came in" to get their children. Shortly after the children went to the locker room, however, Marshall was discovered unconscious in the pool.

---

(1999); Southwest Architectural Products, Inc. v. Smith, 4 Va. App. 474, 478, 358 S.E.2d 745, 747 (1987). See also Rule 5A:18. Moreover, the employer does not raise as an issue on appeal whether the commission erred in so limiting its consideration of the issues before it. For these reasons, we limit our review to the issue decided by the commission.

-

The executive director testified that no one witnessed the incident.  He also testified that, as a trained lifeguard, Marshall was "responsible for the safety and well-being of all [their] patrons."  The executive director further testified that Marshall informed him some weeks prior to his death that he had been "trying to increase the length that he could swim underwater in the pool."  He testified that although Marshall had responsibility for pool maintenance, endurance swimming was not one of Marshall's assigned duties.

The record contains a pre-hospital patient care report, a hospital triage report, a hospital emergency department report, and an autopsy report.  These reports contain conflicting accounts of the discovery of Marshall's body in the pool.  The pre-hospital report prepared by the emergency response team indicates:  "lifeguard at Boys Club pool, swimming laps, underwater.  Other personnel at pool states they left & came . . . 5 min later & found pt. floating in water."  The triage report states:  "pt. found by EMS in swimming pool unresponsive."  The emergency department report dictated by a physician recites the following:

> Paramedics report that the patient was attempting some type of endurance swim.  Bystanders reported that he had swam three lengths of a 25 yard pool underwater and then suddenly "blacked out."  Bystanders pulled him off the bottom of the pool, and CPR was begun.  Paramedics arrived very quickly and found the patient in full cardiac arrest.

-

The autopsy report gives the cause of death as "drowning" and recites that Marshall "was found unresponsive in the swimming pool where he worked."

The deputy commissioner found that "no evidence was presented to explain how [Marshall] had ended up in the pool . . . [or] to substantiate [the] suggestion [he might have been engaging in some endurance swimming at the time]." He applied the unexplained death presumption and awarded benefits to Marshall's minor dependant. On review, the commission found that no evidence proved how long Marshall was in the pool after the children left and that Marshall's "brief swim" in the pool followed immediately upon the departure of the children. The commission also ruled that Marshall's death was unexplained and applied the "unexplained death" presumption.

In addition to approving the deputy commissioner's application of the presumption, the majority of the commission found that Marshall was at work and engaged in the activities of his employer shortly before his death, that Marshall was where he was expected to be, and that no evidence proved how much time passed between the children leaving the pool and the discovery of Marshall's body. The commission also found that the executive director knew Marshall had engaged in underwater endurance swims, that Marshall's employer had acquiesced in the activity, and that the endurance swimming activity incidentally

-

benefited the employer.  Thus, the commission affirmed the award

of benefits to Marshall's minor dependent.

## II.

Code § 65.2-101 requires a person who claims benefits under

the Workers' Compensation Act to prove an "injury by accident

arising out of and in the course of the employment."

> [T]he language "in the course of" refers to
> the time, place, and circumstances under
> which the accident occurred.  An accident
> occurs during the course of the employment
> if it takes place within the period of
> employment, at a place where the employee
> may reasonably be expected to be, and while
> the employee is reasonably fulfilling the
> duties of the employment or is doing
> something reasonably incidental to it.

Briley v. Farm Fresh, Inc., 240 Va. 194, 197, 396 S.E.2d 835,

836-37 (1990) (citation omitted).  The Supreme Court long ago

adopted the following rule:

> [W]here an employee is found dead as the
> result of an accident at his place of work
> or near-by, where his duties may have called
> him during the hours of his work, and there
> is no evidence offered to show what caused
> the death or to show that he was not engaged
> in his master's business at the time, the
> court will indulge the presumption that the
> relation of master and servant existed at
> the time of the accident and that it arose
> out of and in the course of his employment.

Southern Motor Lines v. Alvis, 200 Va. 168, 171-72, 104 S.E.2d

735, 738 (1958).

Although one commissioner believed the evidence failed to

prove Marshall was swimming when he drowned, the majority of the

-

commission found that Marshall had taken a "brief swim."  The commission unanimously found, however, that the Alvis presumption applied.  The commission's findings include the following:

> [Marshall] only shortly before his death was unquestionably engaged in the activities of the employer, i.e., supervising the swimming activities of children under his care.  No evidence was presented regarding how much time passed after [Marshall] had dismissed the children to the locker room and the time at which [Marshall] was found unresponsive in the pool.  Absent such evidence, . . . [the commission] specifically . . . infer[red] that the passage of time was only brief, and the brief swim that [Marshall] attempted did not take him out of the course of employment.

Credible evidence establishes that Marshall drowned while at work.  He had released children from the pool to shower shortly before he drowned in the pool.  The commission drew the inference from the circumstances and Marshall's duties as a lifeguard, that his activities in and around the pool before the children left the shower room related to what he was employed to do.  Although the executive director testified that underwater endurance swimming was not one of Marshall's "duties," we cannot say the commission erred in finding that this testimony was not probative of whether that activity bore a relation to Marshall's conditioning and skills as a lifeguard.  Accordingly, we affirm the commission's ruling that the unexplained death presumption

-

was applicable and that the evidence did not rebut the presumption.

## III.

A majority of the commission made additional findings and ruled further that the credible evidence in the record proved, without application of the presumption, that Marshall's death arose in the course of his employment. The findings include the following:

> [I]t was unnecessary for Marshall to immediately leave the pool area, at least while the children were still in the locker room area. Even more significantly, we reject the argument of the employer that such a deviation, if it had been established by factual evidence, would take Marshall out of the course of employment.
>
> *    *    *    *    *    *    *
>
> The facts in this case establish that the employer, through [the executive director] knew that [Marshall] had been practicing underwater endurance swims. There is no evidence that [the executive director], as [Marshall's] supervisor, advised against it in any way or even discouraged [Marshall's] participation in this activity. Accordingly, we conclude that the employer acquiesced in the activity. Furthermore, we conclude that even this activity had more than an incidental benefit to the employer, in that it would condition [Marshall] for any life saving necessary on behalf of his charges, of which the employer most certainly was aware. Additionally, it is apparent that this was an activity that [Marshall] could not engage in while the children were swimming, but he could attempt the endurance swims during the short period when the children changed clothes in the

-

locker room. On this basis also, we find
the employer's arguments are without merit.

According to well established principles, "[f]actual
findings of the commission that are supported by credible
evidence are conclusive and binding upon this Court on appeal."
Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428
S.E.2d 32, 34 (1993). Moreover, as the finder of fact, "[t]he
commission was privileged to draw a reasonable inference from
the evidence." Buzzo v. Woolridge Trucking, Inc., 17 Va. App.
327, 333, 437 S.E.2d 205, 209 (1993). When it does so, "[t]hat
action of the commission is a finding of fact subject to the
credible evidence standard." Id.

The commission based its findings on the executive
director's testimony and drew reasonable inferences from that
testimony. "Issues of weight and credibility are uniquely
within the province of the commission, and we will not
substitute our judgment for that of the trier of fact."
Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 171, 543
S.E.2d 619, 623 (2001). We hold, therefore, that the
commission's findings are supported by credible evidence in the
record and reasonable inferences drawn from that evidence.

We have specifically held that an employee's personal
activities at work may, under certain circumstances, fall within
the course of employment.

Even though the activity from which the
injury arises has no direct relationship to

-

the employment, yet if it is a common practice among the employees, is acquiesced in by the employer, if the employer has allowed the employee to use the employer's tools and facilities, if the accident occurs during working hours, and if the accident occurs during a lull in regular work so that the questioned activity does not interfere with the employee's duties, such considerations have been held to bring the employee's activities in his own behalf within the scope of employment.

Ablola v. Holland Road Auto Center, 11 Va. App. 181, 184, 397 S.E.2d 541, 543 (1990).

The commission found that Marshall's swim in the pool occurred during his normal working hours and a lull in his schedule. The commission also found that his swim did not interfere with his other duties. The evidence proved the executive director was aware of Marshall's swimming activity, and no evidence indicated he voiced disapproval. Moreover, the commission could reasonably infer from the evidence that Marshall's "activity had more than an incidental benefit to the employer," who depended upon Marshall's lifeguarding skills. It is apodictic that a lifeguard's swimming skills above and below water are integral to his employment responsibilities. Thus, we hold that credible evidence in the record supports the commission's ruling that Marshall's death arose in the course of his employment.

-

IV.

The employer contends the commission had no authority to order it to secure the appointment of a guardian so that the payment of compensation benefits to Marshall's minor dependent "may commence forthwith." The employer cites no authority to support its argument. We previously have held that "[i]n addition to its statutorily granted powers, the commission also has incidental powers which are reasonably implied as a necessary incident to its expressly granted powers for accomplishing the purposes of the Workers' Compensation Act." Bader v. Norfolk Redev. & Hous. Auth., 10 Va. App. 697, 702, 396 S.E.2d 141, 144 (1990). Code § 65.2-525(c) requires that whenever payment of compensation over $300 is due to a minor, the payment shall be made to the guardian of the property of the minor or to such suitable person appointed by the circuit court as trustee. We hold that the commission did not abuse its discretion in requiring the employer to take necessary action to assure the forthwith payment of the awarded compensation benefits.

For these reasons, we affirm the award.

Affirmed.

-