UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Malveaux and Senior Judge Annunziata
Argued by teleconference


WADE PROTUS PHILLIPS

                                                   MEMORANDUM OPINION* BY
v.        Record No. 1963-16-4           JUDGE MARY BENNETT MALVEAUX
                                                   AUGUST 8, 2017
LOUDOUN COUNTY, VIRGINIA


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Julie H. Heiden (Koonz, McKenney, Johnson, DePaolis &
           Lightfoot, LLP, on brief), for appellant.

           Justin R. Main (Michael S. Bliley; Siciliano, Ellis, Dyer &
           Boccarosse PLC, on brief), for appellee.


        Wade Phillips ("claimant") appeals a decision of the Virginia Workers' Compensation

Commission ("the Commission") finding that treatment he received from an unauthorized medical

provider was not compensable by Loudoun County ("employer").  Specifically, claimant argues the

Commission erred in finding he did not demonstrate a "good reason" to have a surgery performed

by a non-treating physician.  For the reasons that follow, we affirm the Commission's decision.

I.  BACKGROUND

        This Court views the evidence in the light most favorable to employer, the prevailing

party before the Commission.  Staton v. Bros. Signal Co., 66 Va. App. 185, 188, 783 S.E.2d 539,

540 (2016).

        Claimant, a Loudoun County deputy sheriff, was injured during an arrest in 2006.  While

attempting to restrain a suspect, claimant's right arm and wrist struck a hard surface.  Claimant

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

experienced wrist and forearm pain which eventually spread to his shoulder and neck. Claimant was awarded temporary total disability benefits and lifetime medical benefits for his injury.[1] He returned to work in December 2006. However, despite treatment by a number of physicians, his symptoms persisted.

In July 2008, Dr. Paul Mecherikunnel examined claimant. Dr. Mecherikunnel, who became claimant's treating physician, diagnosed a neuroma in claimant's right forearm. Dr. Mecherikunnel reviewed claimant's medical records and noted that claimant had sought pain management from several physicians and received different medications from each of them. That September, Dr. Mecherikunnel operated on claimant's right forearm and, among other things, excised the neuroma.

After the surgery, claimant experienced substantial pain relief that continued for approximately one year. Claimant then noticed an increase in pain and a decline in the mobility and functionality of his right arm.

By mid-2013, claimant was suffering from incessant arm pain. He also complained of numbness and tingling in the extremity. Subsequently, Dr. Lee Selznick implanted a spinal cord stimulator in claimant's back. The stimulator provided significant pain relief for two to three months. After this period of time, claimant's pain began to increase while his right arm's strength and dexterity began to deteriorate. Although the stimulator continued to provide some relief, claimant lost strength in his arm until he could no longer raise it to direct traffic.

Dr. Mecherikunnel examined claimant in September 2014. He noted claimaint's ongoing problems with pain and loss of right arm functionality and that claimant appeared stressed,

___

[1] That award terminated on December 13, 2006. A stipulated order entered by the Commission on March 12, 2009, resolved claimant's subsequent claims for benefits filed in February and March 2008. The parties stipulated that claimant had suffered a change in condition for which he was entitled to a resumption of temporary total disability benefits from January 29, 2008 until October 26, 2008. Claimant also received permanent partial disability payments from January 13, 2011 through May 4, 2011.

shaky, and sweaty. Claimant kept his right hand in his pocket, rubbed it constantly, and showed signs of extensive nail biting on that hand. Dr. Mecherikunnel recommended that claimant check with his pain management specialists about possible adjustments to his medications or spinal cord stimulator. He also noted a "great concern" that claimant was experiencing "a somatoform disorder" in which claimant's stresses presented as right arm and hand pain. He opined that claimant should have a case manager consider a psychiatric evaluation to determine the root cause of the problems and how best to manage them.

Claimant later testified that when he left Dr. Mecherikunnel's office after this examination, his understanding was that "there was nothing more [Dr. Mecherikunnel] could do for me." Claimaint acknowledged Dr. Mecherikunnel referred him back to his pain management specialists for adjustments to his pain medication, but stated that he "didn't want to do that." He also testified that he thought his spinal cord stimulator was adjusted after the examination, but that he could not be sure this was done.

Roughly one week later, following a referral by his family physician, claimant was examined by Dr. Ivica Ducic, a board-certified plastic surgeon with a focus on peripheral nerve surgery. Without ordering diagnostic tests, and without reviewing claimant's medical records or discussing claimant's medical history with Dr. Mecherikunnel, Dr. Ducic determined that he could intervene surgically to help claimant. Dr. Ducic instructed claimant to contact his workers' compensation case manager to obtain approval for the surgery, and told claimant that until the surgery he should continue his current course of treatment. Claimant filed a claim for benefits seeking "approval of wrist surgery" in October 2014.

One month after his examination by Dr. Ducic, claimant returned for the operation. In the interim, Dr. Ducic neither spoke with Dr. Mecherikunnel nor examined claimant's medical

records. During the surgery, Dr. Ducic removed two putative neuromas, which he did not send to a pathologist, and excised the radial sensory nerve.

After this surgery, claimant experienced improved dexterity in his right arm. However, his arm still "act[ed] up." During a follow-up examination in April 2015, claimant reported to Dr. Ducic that after a recent shooting practice, his hand was "quite aggravated" by pain which persisted for weeks.[2] During another follow-up examination that August, claimant reported intermittent shooting pain and experienced deep pain at several points on his right forearm. Dr. Ducic concluded that claimant had clearly regressed since his previous visit.

In October 2015, claimant visited Dr. Alok Gopal for pain and medication counseling. Dr. Gopal noted that claimant continued to experience severe arm pain when engaged in certain work duties. The following month, claimant visited Dr. George Van Osten for pain and medication counseling and reported aching, stabbing pain in his right arm. Claimant also related that after working outdoors for several hours in cold and damp conditions, his arm pain increased until he was forced to cease work for a number of days. Claimant told Dr. Van Osten that he wanted some medication to take for such "flare[-]ups."

Prior to a hearing on claimant's claim for Dr. Ducic's surgery, Dr. Mecherikunnel prepared a letter in which he opined the surgery was not necessary, reasonable, or causally related to claimant's work injury. Dr. Mecherikunnel criticized Dr. Ducic for operating without reviewing claimant's medical history, stating that it was his belief that before operating, any reasonable physician would have reviewed the patient's history and would have wanted to know why previous treatments had failed to provide relief. Dr. Mecherikunnel concluded his letter by opining that there was "clear psychopathology" in claimant's pain presentation. He noted that

---

[2] Claimant filed two additional claims in 2015, each of which alleged either compensable consequences of his 2006 injury or new work-related injuries arising from firing a firearm. The parties stipulated to the deputy commissioner that claimant sustained compensable consequences of his 2006 injury while firing a firearm.

claimant's medical records indicated a pattern of claimant seeking treatment from different practitioners, reporting improvement for some time, and then moving on to other practitioners and reporting the same symptoms. He also opined that claimant's habits of massaging his right forearm, sitting on his right hand, and biting his right fingers were inconsistent with a neuropathic pain pattern.

After an evidentiary hearing on January 7, 2016, the deputy commissioner dismissed claimant's claim for the surgery performed by Dr. Ducic. Claimant requested review by the full Commission.

The full Commission, with one dissent, determined that claimant did not meet the requirements for finding unauthorized medical treatment compensable by an employer. The Commision found that when Dr. Mecherikunnel last treated claimant, he recommended that claimant seek adjustments to his medication and spinal cord stimulator. Since claimant failed to follow his physician's treatment recommendations, however, it was not possible to find that Dr. Mecherikunnel's recommended treatment was inadequate. Further, the Commission noted that claimant's pain and other symptoms did not permanently resolve after Dr. Ducic's surgery. The Commission also credited Dr. Mecherikunnel's opinion, as claimant's treating physician, that claimant had established a pattern of seeking treatment from different practitioners, reporting improvements in his condition, and then moving on to new practitioners with renewed symptoms. The Commission further credited Dr. Mecherikunnel's opinion that Dr. Ducic's surgery was not reasonable or necessary and that his performance of surgery, without a thorough review of claimant's medical records, was "unreasonable in itself."

## II. ANALYSIS

Claimant argues that his treatment by an unauthorized medical provider was compensable under the "other good reasons" exception of Code § 65.2-603(C).[3] Thus, the cost of his treatment by Dr. Ducic should be borne by employer. We disagree.

"According to well established principles, 'factual findings of the [C]ommission that are supported by credible evidence are conclusive and binding upon this Court on appeal.'" Boys & Girls Club of Va. v. Marshall, 37 Va. App. 83, 90, 554 S.E.2d 104, 107 (2001) (quoting S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993)). Consequently, "we are bound by the [C]ommission's findings of fact . . . even if there is evidence in the record that would support a contrary finding." Anderson v. Anderson, 65 Va. App. 354, 361, 778 S.E.2d 132, 136 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83-84, 608 S.E.2d 512, 517 (2005) (en banc)). Under this standard of review, we may set aside factual findings of the Commission only where they are "plainly wrong and without evidence to support them." Owens v. York Fire & Rescue, 38 Va. App. 354, 359, 564 S.E.2d 150, 152 (2002).

The Virginia Workers' Compensation Act provides that, where an employee is injured in an accident arising out of and in the course of his employment, "the employer shall furnish or cause to be furnished" an authorized medical treatment provider—that is, "a physician chosen by the injured employee from a panel of . . . physicians selected by the employer." Code § 65.2-603(A). However, an employee may seek employer compensation for treatment rendered

---

[3] On brief, claimant also argues his unauthorized medical treatment was compensable by employer because he sought that treatment when faced with a medical emergency. However, claimant's assignment of error encompasses only the "other good reasons" exception of Code § 65.2-603(C), not the emergency treatment exception. Rule 5A:20(c) "require[s] us to hold that [an] issue is waived because it was not part of [an] appellant's assignment of error on . . . brief." Simmons v. Commonwealth, 63 Va. App. 69, 75 n.4, 754 S.E.2d 545, 548 n.4 (2014); see also Ceres Marine Terminals v. Armstrong, 59 Va. App. 694, 698 n.1, 722 S.E.2d 301, 304 n.1 (2012) (noting, in an appeal from the Commission, that "[u]nder our rules, we only address arguments encompassed by an appellant's express 'assignment of error' in his brief"). Thus, we do not consider claimant's emergency treatment argument.

by an unauthorized physician in an emergency, due to the employer's failure to provide medical care, or "for other good reasons." Code § 65.2-603(C). This Court has "emphasized that 'reimbursement for unauthorized medical treatment should be the rare exception' and that 'when an employee seeks treatment other than that provided by the employer or ordered by the [C]ommission, he or she does so at his or her own peril and risks not being reimbursed.'" H.J. Holz & Son v. Dumas-Thayer, 37 Va. App. 645, 653-54, 561 S.E.2d 6, 10 (2002) (quoting Shenandoah Prods., Inc. v. Whitlock, 15 Va. App. 207, 212, 421 S.E.2d 483, 486 (1986)).

In Whitlock, this Court established a tripartite test for determining when the "other good reasons" exception applies. Application of the statutory exception requires the record to support that (1) the claimant acted in good faith in seeking the unauthorized treatment; (2) "the treatment provided by the employer was inadequate treatment for the employee's condition[,]" and (3) "the unauthorized treatment . . . was medically reasonable and necessary."[4] Whitlock, 15 Va. App. at 212, 421 S.E.2d at 486; see also Dumas-Thayer, 37 Va. App. at 653, 561 S.E.2d at 10.

Whether the treatment provided by the employer was inadequate and the unauthorized medical treatment was medically reasonable and necessary are mixed questions of law and fact. Dumas-Thayer, 37 Va. App. at 654-55, 561 S.E.2d at 11. "Thus, the [C]ommission's conclusions regarding the necessity of the alternative treatment and inadequacy of the treatment actually provided are not binding on appeal." Id. at 655, 561 S.E.2d at 11. In reviewing both issues, "we are guided by the principle that the opinion of the treating physician is entitled to great weight." Id. "However, 'medical evidence is not necessarily conclusive[; it] is subject to the [C]ommission's consideration and weighing.'" Id. (first alteration in original) (quoting

---

[4] We note that neither the deputy commissioner nor the Commission made findings on the "good faith" prong of the Whitlock test. Consequently, we confine our review to the remaining two Whitlock factors.

Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991)). We review the relevant Whitlock factors below.

## A. Adequacy of Treatment

Claimant argues Dr. Mecherikunnel's authorized medical treatment was inadequate for two reasons. First, claimant's lack of improvement under Dr. Mecherikunnel's care demonstrated the inadequacy of his treatment. Claimant points to Dr. Ducic's removal of two putative neuromas as evidence that claimant suffered from an overlooked condition which negatively impacted his ability to recover and prevented Dr. Mecherikunnel's recommended treatment from improving his condition. Second, claimant points to his "huge improvement" after Dr. Ducic's surgery as evidence that Dr. Mecherikunnel's authorized treatment was inadequate.

The record supports the Commission's finding that claimant did not follow Dr. Mecherikunnel's recommended treatment. Claimant admitted he did not want to pursue modifying his pain medication. Further, while claimant was not certain he had his spinal cord stimulator adjusted after last seeing Dr. Mecherikunnel, the record does not indicate such an adjustment was made. Instead, claimant consulted Dr. Ducic, without authorization, approximately a week after he received Dr. Mecherikunnel's recommendation. Just one month after the initial consultation, Dr. Ducic performed the unauthorized surgery.

The Commission's finding that claimant did not follow his treating physician's recommended treatment is supported by credible evidence and thus binding upon us on appeal. Marshall, 37 Va. App. at 90, 554 S.E.2d at 107. Since claimant did not follow that course of treatment, and did not persuasively explain why that treatment could not have helped, there is no basis upon which we can say that the treatment provided by the employer through

Dr. Mecherikunnel was inadequate for claimant's condition.  See Whitlock, 15 Va. App. at 212, 421 S.E.2d at 486.

The Commission was entitled to reject claimant's assertion that he experienced "huge improvement" after Dr. Ducic's surgery and that such improvement demonstrated the inadequacy of Dr. Mecherikunnel's treatment.  While claimant experienced some improvement after Dr. Ducic performed surgery, his right arm still "act[ed] up."  Six months later, during a follow-up visit, claimant reported that firearms practice caused his right hand to become "quite aggravated" by weeks-long pain.  Claimant subsequently filed additional claims based upon these complications.  During another follow-up examination, ten months after Dr. Ducic performed surgery, claimant reported shooting pain and exhibited deep pain, and Dr. Ducic concluded claimant's condition had regressed.  Claimant also continued missing work due to his symptoms, reporting work-related arm pain to pain management specialists, and requesting medication for "flare[-]ups."  Thus, the record does not support claimant's assertion that Dr. Ducic's surgery resulted in "huge improvement" in claimant's condition, and there is no basis for concluding that claimant's post-operative condition in any way reflects upon the adequacy of Dr. Mecherikunnel's authorized medical treatment.  Instead, the record supports Dr. Mecherikunnel's medical opinion that some or all of claimant's ongoing symptoms are the consequence of psychological factors, rather than purely somatic issues for which inadequate treatment was rendered.

Because claimant did not follow his authorized medical provider's recommended course of treatment, and because Dr. Ducic's surgery failed to resolve claimant's symptoms and thus cannot speak to the efficacy of Dr. Mecherikunnel's treatment, we affirm the Commission's finding on the question of the adequacy of the treatment provided by employer.

B.  Medically Reasonable and Necessary Treatment

Claimant argues that the relief he experienced after Dr. Ducic's unauthorized surgery demonstrates that the surgery was medically reasonable and necessary.  Specifically, claimant points to his significant post-operative reduction in pain and need for pain medication as dispositive evidence.

Here, as above, we note that while claimant experienced some improvement immediately after his unauthorized surgery, that improvement proved fleeting.  Following Dr. Ducic's surgery, claimant continued to experience substantial pain and debility from, and further compensable consequences of, his 2006 injury.  Claimant also continued to seek new medication for "flare[-]ups."  Thus, we conclude that any short-term, post-operative reduction in claimant's pain or need for pain medication is not dispositive of whether Dr. Ducic's surgery was medically reasonable and necessary.  See Whitlock, 15 Va. App. at 212, 421 S.E.2d at 486.

We also note the Commission credited Dr. Mecherikunnel's opinion that Dr. Ducic's surgery was not reasonable or necessary.  We will not second-guess this credibility determination; our "well-established standard" of review does not permit us to "'make [our] own determination of the credibility of witnesses.'"  Layne v. Crist Elec. Contr., Inc., 64 Va. App. 342, 345, 768 S.E.2d 261, 262 (2015) (alteration in original) (quoting McKellar v. Northrop Grumman Shipbuilding Inc., 63 Va. App. 448, 451, 758 S.E.2d 104, 105 (2014)).

Dr. Mecherikunnel opined that before performing surgery, a physician acting reasonably would have reviewed the patient's medical history, and Dr. Ducic testified he conducted no such review.  Such a physician also would have ordered pre-operative diagnostic tests, and Dr. Ducic testified he ordered no such tests.  Such a physician also would have sent the putative neuromas he removed to a pathology lab for examination, and Dr. Ducic testified he did not do this.

Dr. Mecherikunnel also opined, as claimant's treating physician, that claimant's pain resulted from psychopathological factors, not a physiological condition. Such factors, by definition, would render surgical intervention not medically reasonable and necessary. Because the treating physician's opinion ordinarily "is entitled to great weight," Dumas-Thayer, 37 Va. App. at 655, 561 S.E.2d at 11, the Commission was entitled to rely upon Dr. Mecherikunnel's opinion if they found it credible.

For these reasons, we affirm the Commission's conclusion that the unauthorized treatment received by claimant was not medically reasonable and necessary.

### III. CONCLUSION

The record does not support that the treatment provided to claimant by employer was inadequate treatment or that the unauthorized treatment received by claimant was medically reasonable and necessary. Thus, the "other good reasons" exception to Code § 65.2-603(C) does not apply. We therefore affirm the Commission's ruling that claimant's unauthorized medical treatment was not compensable by employer.

Affirmed.